**ALBERTSON'S, INC., a Delaware corporation, et al., Plaintiffs-Appellants.**

v.

**The AMALGAMATED SUGAR COMPANY, a Utah corporation, and Utah-Idaho Sugar Company, a Utah corporation, Defendants-Appellees.**

**No. 73–1894.**

United States Court of Appeals, Tenth Circuit.

Argued July 10, 1974.

Decided Oct. 2, 1974.

Dennis McCarthy, Salt Lake City, Utah (Richard W. Giauque and Ricardo B. Ferrari, Salt Lake City, Utah, on the brief), for plaintiffs-appellants.

R. F. Outcault, Jr., Los Angeles, Cal. (Ray, Quinney & Nebeker, Marvin J. Bertoch and James W. Freed, Salt Lake City, Utah, Allan M. Lipman, Jr.; Lawler, Felix & Hall, Marcus Mattson and Robert P. Mallory, Los Angeles, Cal., on the brief), for defendant-appellee The Amalgamated Sugar Co.

Francis R. Kirkham, San Francisco, Cal. (William E. Mussman and James F. Kirkham, San Francisco, Cal., on the brief), for defendant-appellee Utah-Idaho Sugar Co.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an appeal pursuant to 28 U.S.C. § 1292(b) of an interlocutory order of the trial court granting in part, and denying in part, the plaintiffs' motion that their civil antitrust action be maintained as a class action. 62 F.R.D. 43. Fed.R.Civ.P. 23. The action was instituted in the United States District Court for the District of Utah by Albertson's Inc., a retail grocery chain, Spudnut Industries, Inc., a manufacturer of pastries and confections, and Fisher Baking Company, Inc., a now defunct food processor, on behalf of themselves, and all persons and concerns similarly situated. The two named defendants are the Amalgamated Sugar Company, a Utah corporation, and the Utah-Idaho Sugar Company, also a Utah corporation, each of which has its principal place of business in Utah and which maintain sugar beet processing plants in Utah, Idaho, Washington and Oregon. The three named plaintiffs were purchasers of beet sugar from the defendants, and the main thrust of their complaint is that in setting the price of their beet sugar the defendants have violated federal and state antitrust laws.

The complaint contains three counts. Count one alleges that the defendants have agreed, combined, and conspired to fix, raise, maintain and stabilize the price of processed beet sugar in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Count one additionally alleges that the defendants have attempted to monopolize trade and commerce in beet sugar in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. As to these particular claims, the trial court granted the plaintiffs' motion that such be maintained as class actions on behalf of all direct purchasers of beet sugar from the defendants within what is described as the "complaint area," about which more will be said later. This ruling is not involved in the present proceeding.

Count one also contains an additional claim that the defendants have engaged in an unlawful tying arrangement in vi-

olation of the aforesaid Sections 1 and 2 of the Sherman Antitrust Act. The trial court denied plaintiffs' motion that this particular claim be maintained as a class action, and in this interlocutory appeal the plaintiffs challenge the propriety of such order.

Count two alleges that the defendants through their use of a distant basing point price system are guilty of unlawful price discrimination in violation of Section 2(a) of the Clayton Antitrust Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). Count three alleges that the defendants have unlawfully combined and conspired to control the price of beet sugar and charges for its transportation in violation of the Utah Constitution and local Utah antitrust laws. The trial court denied plaintiffs' request that counts two and three proceed as class actions, and plaintiffs also challenge the propriety of those orders in this appeal.

A two-day evidentiary hearing was held in connection with the plaintiffs' motion that their entire case proceed as a class action. Though the trial court probably did not make "findings of fact," as that term is used in Fed.R.Civ. P. 52, nonetheless in its carefully prepared memorandum consisting of some twenty-six typewritten pages it did "give certain facts" as thus developed by the parties at the aforesaid evidentiary hearing. Thus the trial court did not resolve this matter in a factual void and the record as thus made, coupled with the trial court's memorandum order granting in part, and denying in part, the plaintiffs' motion, gives insight into the trial court's reasoning, save and except as to Count three in the complaint alleging violation of Utah laws. We will reserve comment on that part of the trial court's order denying the request that Count three proceed as a class action, and will first consider the propriety of the trial court's order that the claims based on tying arrangement and price discrimination should not be maintained as class actions.

In denying plaintiffs' request that their claims based on a tying arrangement and price discrimination proceed as class actions, the trial court concluded that there was a conflict of interest within the class and a lack of commonality of interest as required by Fed.R. Civ.P. 23(a)(3) and (4) and (b)(3). Before considering the conflict of interest issue, we, like the trial court, would refer to the evidence before the trial court at the time of its ruling.

The so-called "complaint area" with which we are here concerned consists of the states of Utah, Idaho, Washington, western Wyoming, and all of Oregon, except for the extreme southern portion thereof. The plaintiffs are currently engaged in their respective business enterprises within that area, except for the one plaintiff, Fisher Baking Industries, Inc., which has now ceased operations, but was operating during the complaint period, which was January 1, 1961, to December 31, 1970. One defendant, Amalgamated Sugar, maintains three sugar beet processing plants in Idaho and one in Oregon, and the other defendant, Utah-Idaho, maintains two processing plants in Washington, and one such plant in both Idaho and Utah.

Albertson's purchases beet sugar from the defendants for purposes of resale, and also for use in the preparation of baking goods, ice creams, and the like, which in turn are sold to the public. The other two named plaintiffs purchased beet sugar from the defendants for use in the preparation of bakery goods, confections, and the like. The members of the class which the named plaintiffs seek to represent are all other direct purchasers for purpose of resale of beet sugar from the defendants in the complaint area, including, according to the defendants, hundreds of grocers, bottlers, confectioners, bakeries, dairies, canners, and others situate throughout the complaint area, who have purchased sugar from the defendants at any time during the complaint period, which is from 1961 through 1970. As indicated, the gravamen of the complaint relates to

the manner in which the defendants set the price for their sugar. Let us look at the manner in which the defendants fix the price of their beet sugar in the complaint area.

Sugar, whether it be cane or beet, is a fungible goods, with the ultimate product being chemically identical. Hence, if there were a retail price differential between cane and beet sugar, the buying public would generally purchase the lower price sugar, be it beet or cane, since there is little real difference between the two. Because of this identity, the pricing policy followed by the defendants is to meet the price for which cane sugar sells in any given locality, and the defendants will quickly follow any increase or decrease in the price of cane sugar. The defendants, according to testimony, cannot profitably operate if they undersell the charge made for cane sugar. On the other hand, the defendants never attempt to charge more than the figure for which cane sugar is selling in a particular market, since, as indicated, the buying public would purchase the sugar, be it cane or beet, selling for the lower price, sugar being an essentially fungible goods. It is for these reasons that the defendants attempt to tie their pricing into that of the cane sugar processors. The cane sugar processors were in the continental United States market before the beet sugar processors, and it is perhaps for this reason, i. e., a custom that has developed in the trade, that the beet sugar processors gear their pricing to that of the cane sugar processors, rather than vice versa. In any event, that's the way it is.

The price which the defendants charge for sales of processed beet sugar to purchasers within the complaint area is made up of two components: (1) The base price charged by California and Hawaii Sugar Company, a cane sugar refiner found by the trial court to be a price leader, FOB its Crockett, California, refinery; plus (2) a "prepay" equal to the cost of shipping the cane sugar from the Crockett refinery to the particular price zone within the complaint area in which the purchaser is located, the complaint area being itself subdivided into some ten to twelve price zones. In thus setting their price, the defendants will meet the price of C & H.

As indicated, the main thrust of the plaintiffs' action is that the manner in which the defendants set the price of their beet sugar within the complaint area is violative of federal and state antitrust laws. In this regard it is the contention of the plaintiffs that throughout the entire complaint area the "prepay" component of the price charged by the defendants for their beet sugar almost invariably exceeds the actual freight charge for the transportation of the beet sugar from the defendants' processing plants to the purchaser in question. This excess is referred to by the plaintiffs as "phantom freight."

The defendants, on the other hand, contend that phantom freight is but a play upon words, and that no correlation between prepay and actual freight charges was ever intended. The defendants, it is said, are merely trying to meet the sale price for cane sugar throughout the entire complaint area and that in computing their price in their effort to meet cane sugar competition, the defendants have simply adopted a formula which is based on the C & H FOB price on cane sugar at the Crockett refinery, plus the cost of shipping such cane sugar from the Crockett refinery to the particular location of the purchaser. Viewed in this light, assert the defendants, the price charged purchasers by the defendants is the delivered price, and accordingly the purchaser is not charged anything, as such, for freight.

The trial court denied plaintiffs' request that their claims based on tying arrangement and price discrimination be maintained as class actions on the ground that there was not a commonality of interest within the class, and that in fact there was a conflict of interest among the class members. The trial court was of the view, which is not challenged on appeal, that if the plaintiffs be ultimately successful on their claims

based on tying arrangement and price discrimination, the defendants would necessarily be enjoined from pricing their beet sugar on the base point pricing method. This would mean that the defendants would have to devise a new and different pricing system which would give recognition to the actual freight charges involved. All of which would mean that the purchaser in a particular price zone within the complaint area ·nearer to one of the defendants' plants would pay a less price for beet sugar than would the purchaser further removed, though still within the same price zone in the complaint area, from the defendants' processing plant. The trial court concluded that such indicated a conflict of interest within the class, a conflict not only as to the price to be paid for beet sugar, but also a conflict which would be disruptive of the competitive position of the various members of the class, all of whom, as indicated, were direct purchasers, who, in turn, resold the sugar, in one form or another, to the consuming public. We agree with the trial court's analysis of the matter.

■ For an action to be maintained as a class action, a plaintiff must satisfy the four requirements of Rule 23(a) and any one of the three subdivisions of Rule 23(b). Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973). The burden is upon the party requesting a class action to show that the several requirements of Fed.R.Civ.P. 23 are satisfied. Rossin v. Southern Union Gas Company, 472 F.2d 707 (10th Cir. 1973). The trial court, as above indicated, was not satisfied that the requirements of the aforesaid rule had been satisfied, particularly the requirements relating to commonality of interest among the class. The trial court perceived that if the plaintiffs succeeded in showing an unlawful tying arrangement or price discrimination, its "final order would enjoin all 'objectionable' contracts and thereby effectively end base point pricing." The trial court recognized that in all probability any substitute pricing plan devised by the de-fendants would not result in any purchaser paying more for beet sugar than he was presently paying, though some would be paying less than others, depending upon their proximity to defendants' processing plants. Because of such disparity, the trial court concluded that there was a conflict of interest among class members as concerns their competitive relationship, one with the others. In this connection the trial court commented as follows:

Even though the price of sugar will not be raised as a result of this litigation, conflict of interest among the class members is still present. The diversity of interest stems from the disruption of competitive relationships throughout the Intermountain Northwest region. The aim of the tying agreement allegation is to reverse the present situation where customers closer to the refineries pay more for sugar than the more distant purchasers. It is evident that, if this injustice is "rectified," the competitive position of a distant customer will be substantially changed vis-a-vis his more local competitor. The defendants introduced an exhibit which typifies the potential alteration in the current competitive relationships among class members regardless of what new basic price is charged. To take the most drastic change as shown by the chart, as between purchasers at Salem, Oregon, vis-a-vis a buyer at Yakima, Washington, the net change is 69 cents per hundred-weight (per bag).

■ It is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L. Ed. 22 (1940); Schy v. Susquehanna Corporation, 419 F.2d 1112 (7th Cir. 1970). See also 7 Wright and Miller, Federal Practice and Procedure § 1768. And this requirement of adequate representation must be stringently applied because members of the class are bound unless they affirmatively exercise their option to be excluded, even though they

may not be actually aware of the proceedings. Alameda Oil Company v. Ideal Basic Industries, Inc., 326 F.Supp. 98 (D.C.Colo.1971).

We recognize that the mere fact that the various members of the class will benefit unevenly is no such conflict as will preclude the maintenance of a class action. However, the instant case goes beyond a mere disparity in benefit. The named plaintiffs and the class they would represent are themselves competitors, and we agree with the trial court that if the defendants' present system of pricing is outlawed, "the competitive position of a distant competitor will be substantially changed vis-a-vis his more local competitor." The effects of the abrogation of the defendants' base point pricing method would indeed have far-reaching and diverse impact on the defendants' hundreds of purchasers for purposes of resale of beet sugar in the complaint area. In sum, our study of the matter leads us to conclude that the trial court did not abuse its discretion or otherwise err in denying plaintiffs' request that their claims based on an alleged tying arrangement and price discrimination be maintained as class actions on the grounds of lack of commonality of interest among the class members. We find ourselves in general agreement with the trial court's line of reasoning, and the record is supportive of such reasoning.

There is no suggestion here that the action of the trial court in refusing to permit plaintiffs' claims based on tying arrangement and price discrimination to proceed as class actions is inconsistent with its ruling that plaintiffs' claims based on conspiracy and attempt to monopolize should proceed as class actions. In this regard the trial court noted that as concerns the claims based on conspiracy and monopoly, any relief which might ultimately be granted "would not go to the continuation of base point pricing." Hence, there would be no potential conflict of interest, since the defendants' system of pricing would continue as in the past. On the other hand, however, if the plaintiffs are successful in their claims based on tying arrangement or price discrimination, the defendants' pricing of their beet sugar on the base point pricing method would be ended, thereby giving rise to the conflict of interest found by the trial court.

We are in somewhat of a quandary as concerns the trial court's denial of the plaintiffs' request that their third count (the one based on violation of Utah antitrust law) be maintained as a class action. The trial court denied this particular request, without comment. As indicated, the trial court prepared a twenty-six page memorandum in explanation of its other rulings on plaintiffs' class action request, but made no explanation as to why this particular claim should not proceed as a class action.

Plaintiffs argue here that since the trial court granted their request that their claims based on federal law relating to unlawful conspiracy and monopoly be maintained as a class action, it would follow that similar claims based on state law should also proceed as a class action. Contrarily, the defendants offer several possible explanations which would support the action of the trial court denying plaintiffs' request that Count three be maintained as a class action. Our problem is that we simply do not know the basis for the action of the trial court in this regard, and in such circumstance it becomes difficult to review the propriety of the action thus taken. Accordingly, we are inclined to vacate that part of the order denying class action treatment for Count three, and remand the matter with direction that the trial court reconsider this phase of the order only. Upon reconsideration, the trial court should then in some wise articulate the basis for its ultimate determination as to whether Count three should proceed as a class action. Whatever its ultimate decision in this connection may be, we perceive no good reason why such should be the subject of any subsequent interlocutory appeal. Count three is not the core of this case.

Like the trial court, we would emphasize the "limited scope" of the trial court's inquiry, and the equally limited

scope of our own review of the matter. Except for Count three, the sole issue is the propriety of the trial court's determination that the claims based on tying arrangement and price discrimination should not be maintained as class actions. We have concluded that, based on the record then before it, the trial court did not err in its determination that they should not so proceed because of a conflict of interest within the class. That, in our view, ends our present review, and we need not here consider other matters sought by the plaintiffs to be reviewed at this stage of the case. They will have to await the trial of the case on the merits. Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973), at page 339, plus footnote 7.

The order of the trial court is affirmed, except as to that portion of the order relating to Count three. That portion of the order is vacated, and the matter is remanded for further consideration by the trial court, consonant with the views herein expressed.