In re The **WOODMOOR CORPORATION,** Bankrupt.

**Bankruptcy No. 74 B 282.**

United States Bankruptcy Court, D. Colorado.

May 5, 1980.

---

Arthur L. Fine, Denver, Colo., for the Millers and Bronners.

Alan R. Marsh, Denver, Colo., for trustee.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS ON MOTION FOR DETERMINATION THAT THE PURCHASERS OF PROPERTY IN STAGECOACH, COLORADO, MAY PROCEED AS A CLASS

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is the Motion of Robert and Carol Miller and James and Barbara Bronner for Determination that the Purchasers of Property in Stagecoach, Colorado, from Woodmoor May Proceed as a Class. The Millers and Bronners who have filed claims against the bankrupt, The Woodmoor Corporation (Woodmoor), contend that questions of law or fact common to the members of the putative class predominate over questions affecting only individual members and that a class should be certified pursuant to Rule 723 of the Rules of Bankruptcy Procedure. The trustee of the bankrupt, William C. Lam, opposes a class action claiming that it is unnecessary and unjustified. A hearing on the motion was held on February 19, 1980, at which Arthur L. Fine represented the Millers and Bronners and Alan R. Marsh represented the trustee.

The facts are as follows. Woodmoor was engaged in the real estate development business. Its method of operation was to acquire a large tract of unimproved land and subdivide it into residential, commercial and recreational areas. One of its projects

was at Stagecoach, Colorado. On January 31, 1974, the company filed a petition under Chapter XI of the Bankruptcy Act and was subsequently adjudicated a bankrupt on July 18, 1975. Approximately 900 persons who purchased lots at Stagecoach from the bankrupt filed claims against the estate. The claims vary in amount. Some are for as little as $681.60, some are in excess of $10,000.00 and some are in unspecified amounts. The claims are based upon the failure of the bankrupt to provide allegedly promised amenities, including roads, water and sewer facilities, and electric, telephone and gas service. Other amenities supposedly promised to the lot purchasers include ski facilities, a country club, golf courses, tennis courts, a swimming pool, a recreational lake, and hiking and equestrian trails and facilities. In addition, claims against the estate are founded upon alleged misrepresentation concerning investment potential of lots, availability of a Woodmoor sales force to aid in the re-sale of lots, and the publishing of a newspaper. Claimants variously contend that the alleged promises and representations were made by means of sales brochures, verbal statements, property reports and a prospectus.

The Motion for Class Certification was filed on October 28, 1975. A hearing was requested on December 14, 1979 to determine whether a class should be certified. The Millers and Bronners seek to proceed as representatives of a class for the purpose of determining the allowability of the claims of Stagecoach, Colorado, lot purchasers against the bankrupt. The question before the Court is whether a class of those lot purchaser claimants against Woodmoor should be certified.

The trustee has objected to all of the Stagecoach landowner claims which are based upon the failure of the bankrupt to provide amenities. If claims are objected to, Rule 306(c) of the Rules of Bankruptcy Procedure is applicable. It provides in pertinent part:

If an objection to a claim is joined with a demand for relief of the kind specified in Rule 701, the proceeding thereby becomes an adversary proceeding.

Rule 723 of the Rules of Bankruptcy Procedure provides that Rule 23 of the Federal Rules of Civil Procedure relating to class action applies in adversary proceedings. However, since no demands for relief specified in Rule 701 were joined with the trustee's objections to Stagecoach landowners' claims, his objections to those claims are contested matters and not adversary proceedings. Rule 914 governs contested matters which are not otherwise governed by the Bankruptcy Rules. 3 *Collier on Bankruptcy*, 14th ed., ¶ 57.18[1], p. 290. Rule 914 does not automatically make Rule 723 applicable to these contested matters. However, if complexity and due process require the application of Rule 723 to contested matters, Rule 914 leaves discretion in the court to apply it. 13 *Collier on Bankruptcy*, ¶¶ 914.02 and 914.03, pp. 9–60 and 61. The question is, then: should Rule 723 be applied to these contested matters? Before deciding that question, the threshold issue of whether the Stagecoach claimants can satisfy the requirements of Federal Rule of Civil Procedure 23 must be decided.

■ The burden is upon the party requesting a class action to show that the four requirements of Rule 23(a) and any one of the three subdivisions of Rule 23(b) are satisfied. *Albertson's, Inc. v. Amalgamated Sugar Company*, 503 F.2d 459, (10th Cir., 1974). Consequently, that burden falls on the Millers and the Bronners. They contend that the requirements of Rule 23(a) and of Rule 23(b)(3) are met. The trustee argues that neither the "numerosity" prerequisite of Rule 23(a)(1), the common-issue requirement of 23(a)(2), nor any of the subdivisions of Rule 23(b) has been satisfied.

### I. RULE 23(a)

■ Rule 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"The raison d'etre of the class suit doctrine is necessity, which in turn depends upon the question of number." 3B *Moore's Federal Practice*, ¶ 23.05[1], p. 23–149. Subdivision (a)(1) of the Rule presents a question of what constitutes impracticability. That is, "when is a class so numerous as to make it impracticable to bring them all before the court[?]" *Id.* The Stagecoach landowner claimants are already parties to this bankruptcy proceeding by virtue of their filing proofs of claim against the bankrupt. Their approximately 900 claims are presently pending before the Court demonstrating that the claims are not so numerous that the individual joinder of each to the bankruptcy proceeding is impracticable. Their claims can be conveniently and expeditiously managed by following normal bankruptcy procedures. It is not unusual for large numbers of claims to be filed, objected to and allowed or disallowed in bankruptcy cases. The Bankruptcy Act and Rules are perfectly suited to effect the efficient handling of these landowner claims. Thus, the numerosity requirement of Rule 23(a)(1) has not been met.

Subdivision (a)(2) requires that "there are questions of law or fact common to the class [Rule 23(a)(2)]." As stated in *Wright & Miller, Federal Practice and Procedure*: Civil § 1763, at page 609:

It should be noted that Rule 23(a)(2) actually may be a superfluous provision, or at least partially redundant, since the existence of common questions can be viewed as an essential ingredient of a finding that the case falls within one of the three categories of class actions described in subdivision (b). (footnote omitted)

As will be explained below, the requirements of none of the three types of class actions of subdivision (b) are met. Hence, the common-issue requirement of subdivision (a)(2) has not been satisfied.

The trustee concedes that the typicality standard of subdivision (a)(3) is met. The Tenth Circuit stated in *Taylor v. Safeway Stores, Incorporated*, 524 F.2d 263 (10th Cir., 1975) at page 270 that "Rule 23(a)(3) requires a comparison of the claims or defenses of the representative with the claims or defenses of the class." The Millers' and Bronners' claims are based on the failure of Woodmoor to provide supposedly promised amenities as are the claims of other members of the putative class. However, it is not clear that the substance of those alleged promises or the manner in which they were made to the representatives are typical of the class. Nevertheless, in *White v. Gates Rubber Company*, 53 F.R.D. 412 (D.Colo., 1971) the Court stated at page 415:

A more reasonable reading of the requirement [of subdivision (a)(3)] would seem to entail the necessity of demonstrating that there are other members of the class who have the same or similar grievances as the plaintiff. (insert added)

Simply, subdivision (a)(3):

[I]s an attempt to assure that there is in fact a class needing representation. *Id.* at p. 415.

Claims of members of the putative class that the Millers and Bronners wish to represent are based upon the same grievances of which the representatives complain. Consequently, claims of the Millers and Bronners are typical of the class as required by subdivision (a)(3).

Turning to subdivision (a)(4), adequacy of representation is "[O]f critical importance in all class actions . . . ." *Wright & Miller, Federal Practice and Procedure*: Civil § 1765, p. 617. It is an essential element in due process considerations of class actions. The Millers and Bronners filed their Motion for Determination of a Class on October 28, 1975, but did not request a hearing on it until December 14, 1979—more than four years later. In *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), despite class allegations in their complaint, the plaintiffs did not move to

have that action certified as a class action prior to trial. The Court held at pages 404 and 405, 97 S.Ct. at page 1897 that a strong indication that the plaintiffs "would not 'fairly and adequately protect the interests of the class' (footnote omitted)":

> [W]as their failure to move for class certification prior to trial. Even assuming, as a number of courts have held, that a district judge has an obligation on his own motion to determine whether an action shall proceed as a class action [as the Tenth Circuit has held] (cites omitted), the named plaintiffs' failure to protect the interests of class members by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive. (insert added, cites omitted)

It is evident that a ruling on the class action motion would have served no purpose before it was determined in early 1979 that there were adequate assets from which to pay a dividend to creditors. What is unclear is whether the Millers and Bronners were remiss in failing to move for class certification prior to the trustee's objections to their claims or those of the putative class. Inasmuch as the numerosity requirement of subdivision (a)(1) and, as will be shown, the common-issue requirement of subdivision (a)(2) have not been met, the Court need not decide whether the adequacy of representation issue of subdivision (a)(4) has been fulfilled. Since all of the mandatory requirements of Rule 23(a) have not been fulfilled, a class action is not maintainable. However, the Court believes that under the circumstances of this case it would be appropriate to discuss the suitability of each of the subdivisions of Rule 23(b) to this matter.

## II. RULE 23(b)

Subdivision (b)(1) provides:

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

A class should be certified under Rule 23(b)(1)(A) where:

> One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of a class might establish incompatible standards to govern his conduct. The class action device can be used effectively to obviate the actual or virtual dilemma which would thus confront the party opposing the class. U.S.C.S. Rules of Civil Procedure, Rule 23, Notes of Advisory Committee on 1966 Amendments to Rules, p. 19.

As Stagecoach lot owners are only seeking payment of their claims, there is no standard of conduct which might be imposed on the bankrupt. Therefore, Rule 23(b)(1)(A) is inapplicable to this controversy.

Rule 23(b)(1)(B) would require class certification if, for example, the claims of the plaintiffs were to exceed the assets of the defendant and one group of individuals were allowed to be fully compensated while another were not compensated at all. In such a situation, the rights of those not before the court would clearly be impaired in the absence of a class action. *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335 (9th Cir., 1976). However, bankruptcy procedure provides for a *pro rata* distribution to all claimants with allowed claims and, thus, precludes such an unjust result. As noted in 3B *Moore's Federal Practice,* ¶ 23.35[2] at p. 23–279:

This grab policy may, of course, not be open to [an individual creditor] where the debtor is subject to some proceeding looking toward the benefit of all creditors, such as a receivership or bankruptcy proceeding. In the latter proceeding, for example the trustee acts for the benefit of the estate and any recovery will be for the benefit of creditors in accordance with the distributive scheme of the Bankruptcy Act.

In addition, the *stare decisis* effect of the determination of the propriety of an individual claim will not result in the disposition of other claims of the class or in their substantial impairment. *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461 (9th Cir., 1973). Therefore, a class action is not mandated by subdivision (b)(1)(B) of Rule 23.

Rule 23(b)(2) allows a class action to be maintained if:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

As stated in the Notes of Advisory Committee on 1966 Amendments to Rules, U.S.C.S. Rules of Civil Procedure, Rule 23, at page 21:

This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.

The Tenth Circuit stated in *Rich v. Martin Marietta Corporation*, 522 F.2d 333 (10th Cir., 1975) at page 341 that under Rule 23(b)(2) "[T]he primary relief sought must be injunctive or declaratory . . . ." Stagecoach claimants are only seeking monetary compensation from the bankrupt's estate and not injunctive or declaratory relief. A class may not be certified under Rule 23(b)(2).

The class representatives contend that a class should be certified under Rule 23(b)(3) because questions of law and fact of members of the class predominate over questions affecting only individuals and because a class action is superior to other methods of adjudication. Rule 23(b)(3) requires the Court to find:

[T]hat the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As set forth in 3B *Moore's Federal Practice*, ¶ 23.45[2] at pages 23–324 and 325, before certifying a class the court must:

[B]e certain of the existence of a group which is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in the matters peculiar to them.

The court should ascertain " 'whether a class action will splinter into individual trials. If this appears likely, common questions do not predominate, and a class action is inappropriate (footnote omitted).' " *Id.* at pp. 23–329 and 330.

There is one legal and one factual question involved in the landowners' claims. The legal question is whether the landowners' claims are allowable. This involves the question of whether the bankrupt is liable to landowners for its failure to provide certain amenities at Stagecoach. The factual question concerns the amount of the landowners' claims if allowed and is simply a

question of damages for failure to provide amenities. Whether common questions concerning the allowability of the landowners' claims predominate will be considered first.

Creditors who are owed money by a bankrupt will have the debts owed them resolved in one of three ways. They may choose not to file a claim against the estate; they may choose to file a claim and it may be allowed without objection, or; they may choose to file a claim, the trustee may object to it and the court will allow, disallow or modify it. Is a class action necessary in any of these situations?

█ As to the first situation, in order to be entitled to a *pro rata* distribution in bankruptcy, a claim must be proved and filed as provided for by Rules 301–304. 3 *Collier on Bankruptcy*, ¶ 57.14[1], p. 228. If any Stagecoach landowners failed to properly prove and file his claim as required by the Bankruptcy Act and Rules, he is not entitled to participate in the distribution of the bankrupt's assets. To allow some members of the putative class to file claims on behalf of all members of the class and to allow participation of all as a result thereof would conflict with the statutory scheme of the Bankruptcy Act. Each claimant must prove and file his own claim and a class action cannot be maintained to circumvent that requirement. *In re Society of the Divine Savior*, 15 F.R.Serv.2d 294 (E.D.Wis., 1971), *Society of the Divine Savior* hereafter.

In the second situation, Rule 301(b) provides that a properly executed and filed proof of claim constitutes *prima facie* evidence of its validity and amount. All proved and filed claims to which the trustee does not object are deemed allowed, and clearly a class action would serve no purpose as to those claims (Rule 306(b)).

█ In the last situation, if the trustee objects to a claim, as the trustee has done with respect to the Stagecoach claims, he

must rebut the presumption of its validity. 3 *Collier on Bankruptcy*, 14th ed., ¶ 57.13, pp. 224 through 226.

If this presumption is overcome, the burden is on the claimant to prove his claim by a preponderance of the evidence, and the bankruptcy judge must determine whether or not he has done so, having due regard to the probative value of the proof of claim. *Id.*, pp. 226 and 227. It is only in this third context that a class of claimants could conceivably be meaningful.[1] However, claims against a bankrupt estate may not be treated *en masse* but instead each must be treated on its own merits. 3 *Collier on Bankruptcy*, 14th ed., ¶ 57.18[7], p. 303. Thus, the requirement of individual determinations of the allowability of claims precludes a class action. Still, assuming arguendo the propriety of the collective judging of claims, the question remains whether common questions of law as to the allowability of the Stagecoach landowners' claims predominate so that a class may be certified for that determination.

Paragraph 4 of the proof of claim form sent by the trustee to landowner claimants requests them to state the facts and circumstances which gave rise to their claims. The Millers and Bronners responded:

Because of the complexity of the facts we have attached our Complaint in federal court which explains the claims and the facts surrounding it. (Claims Nos. I–798 and I–797).

The complaint shows that the Millers and Bronners based their claims on alleged securities laws violations, violations of the Interstate Land Sales Full Disclosure Act, and common law fraud. Their claims indicate that they received, among other written material concerning Stagecoach, an Illinois Land Sales Section Public Property Report and a Property Report dated February 12, 1973. It states they relied on these documents as well as on a visit to the develop-

---

1. In a previous hearing, Mr. Fine, as attorney for the Stagecoach Landowner Protective Committee, argued that claims could not be disallowed without an evidentiary hearing on the merits. As the Court stated in its opinion, the claims were disallowed by default judgments because of the failure of the claimants to respond to the trustee's objections as required by Court order, *In re Woodmoor*, No. 74 B 282 (D.Colo. Bankruptcy, (May 5, 1980)).

ment site and on other oral and written representations. Proofs of claim of other claimants show that they variously relied on sales brochures, a prospectus, property reports and oral representations made by a variety of named and unnamed representatives of Woodmoor.

To demonstrate that evidence of the allowability of claims of the class may be established by the consideration of a few representative claims, the Millers and Bronners must show that any misrepresentations or nondisclosures concerning allegedly promised amenities at Stagecoach were common to the class. *Clark v. Watchie*, 513 F.2d 994 (9th Cir., 1975). There has been no such showing. It cannot be assumed and the Millers and Bronners have not established that the property reports or sales materials received by them were received by most of the class members or if received, that they were standardized. Purchasers in different states may have received differing or additional information, required by state law. The Bronners and Millers apparently visited the development site once while other purchasers may have visited several times or may not have visited at all. There has been no showing of a common course of fraud giving rise to the landowners' claims. Oral communications by various Woodmoor representatives were a part of some of the alleged misrepresentations and they undoubtedly varied in number and nature. In determining the allowability of claims, the Court will have to examine the circumstances surrounding each claimant's understanding of his "contract for amenities" with the bankrupt. This will require a separate hearing for each such claimant. There has been no showing of common or standard oral or written representations or of standard nondisclosures which would justify the certification of a class for the purpose of determining liability. *Gilbert v. Woods Marketing, Inc.*, 454 F.Supp. 745 (D.Minn., 1978), *Gilbert* hereafter.

■ As to the damage issue, the Millers and Bronners contend that there is no significant variation in value among the lots and that the trustee could easily estimate the loss to each resulting from the failure of the bankrupt to provide amenities. In fact, the opposite is true. Each claimant's lot varies in its location, terrain, current value and improvability as well as in its proximity to roads, utilities and facilities. The damages sustained due to the failure of the bankrupt to provide amenities would differ for each lot owner. Further, the claims themselves vary widely in amount. There is complete variety rather than commonality involved in the factual damage issue. Since Rule 23(c)(4)(A) empowers the Court to certify a class action with respect to only particular issues, the existence of individual damage issues does not, by itself, preclude class certification. In *Bogosian v. Gulf Oil Co.*, 561 F.2d 434 (3rd Cir., 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), the Court at page 456 said:

> [I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate. (cites omitted)

However, as shown, the issues which determine liability of the bankrupt are not predominantly common. As stated in *Gilbert, supra* :

> Individual damage issues do not automatically prevent class certification (cites omitted), but where other factors indicate that common questions may not predominate, it is appropriate to consider the cumulative impact of separate damage issues. at p. 750.

Common questions of law do not predominate as to the allowability of the landowners' claims and common questions of fact do not predominate as to damage issues.

■ Finally, there is the requirement of subdivision (b)(3) that a class action must be superior to other available means for fair and efficient adjudication of this controversy. As noted, the Bankruptcy Act requires that each prospective class member must have filed a claim against the Woodmoor estate in order to participate in any dividend. Therefore, as stated in *Wright &*

*Miller, Federal Practice and Procedure*: Civil § 1754 at page 547: "[S]ince the Bankruptcy Court has complete control over the bankrupt's estate, there really is little reason to fear multiple or repetitious litigation" which might otherwise only be avoided by class action. See also, Rule 23(b)(3)(B) and (C). Further, to allow representative claimants to proceed on behalf of a class of claimants would deprive class members of their interest in "individually controlling the prosecution" of their own claims which interest is inherent in the scheme of the Bankruptcy Act. *Society of the Divine Savior, supra,* and Rule 23(b)(3)(A).

 To the extent that similar issues of law or fact might exist as to claims objected to by the trustee, the principles of collateral estoppel and *stare decisis* may be invoked as is appropriate to simplify the proof of the allowability of smaller claims. *Society of the Divine Savior, supra,* at pp. 298 and 299. The Court concludes that a class action to determine the validity of the Stagecoach landowners' claims is not superior to the normal claims allowance procedure under the Bankruptcy Act.

The representatives' contention that class certification is necessary to facilitate notice to claimants of the trustee's objections to their claims is not apt. Rules 306(c) and 203 provide notice requirements for objections to claims. The procedure contemplated by those Rules is adequate to protect the due process rights of Stagecoach landowners to whose claims the trustee has objected. *In re Woodmoor,* 4 B.R. 186 (D.Colo.1980).

The Millers and Bronners have failed to sustain their burden of showing that a class is certifiable under Federal Rule of Civil Procedure 23. The numerosity requirement of subdivision (a)(1) and the commonality requirement of (a)(2) have not been fulfilled. None of the three subdivisions of Rule 23(b) has been satisfied. Even if a class had been shown to be certifiable under Rule 23, there has been no showing that complexity or due process requires Bankruptcy Rule 723 to be applied by the Court

to these contested matters. Normal bankruptcy claims procedures are fully adequate to protect claimants' interests and to expeditiously judge their claims.

ORDERED that the Motion for Determination that the Purchasers of Property in Stagecoach, Colorado, from The Woodmoor Corporation May Proceed as a Class is denied.

FURTHER ORDERED that the parties shall have ten days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Deputy Clerk without further order of the Court.