**In re COMPUTER DEVICES, INC., Debtor.**

**Case No. 83–01505–JG.**

United States Bankruptcy Court, D. Massachusetts.

July 31, 1985.

472

Mark N. Berman, Widett, Slater & Goldman, P.C., Boston, Mass., for plaintiff.

Peter A. Pease, Berman, Devalerio & Pease, Boston, Mass., for defendant.

## MEMORANDUM

HAROLD LAVIEN, Bankruptcy Judge.

Before the Court is the Debtor's Motion to Disallow or Subordinate the Claim of Joseph Davella. A hearing on the Motion was held on May 30, 1985 and the matter was taken under advisement. Both the debtor and the claimant filed briefs and reply briefs. The undisputed and agreed facts are as follows.

The debtor, Computer Devices, Inc., ("the debtor" or "CDI") filed a voluntary chapter 11 petition in this Court on October 31, 1983. Prior to filing chapter 11, in July of 1983 CDI commenced a public offering of one million shares of its common stock. In November 1983, Joseph Davella ("Davella" or "the claimant") filed a civil action in the Southern District of New York as a class action suit on behalf of himself and all other purchasers of the one-million shares of CDI stock pursuant to the public offering against certain directors and officers of CDI and A.G. Becker Paribas, Inc., the investment banker who served as underwriter for the public offering. The debtor was not named as a defendant in the class action because the automatic stay of 11 U.S.C. § 362 (a) prohibited the commencement of any judicial proceedings against the debtor. The class action complaint sought an unspecified amount of damages for violations of sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. sections 77k, 77l, and 77o (1933), and alleged as facts that the prospectus CDI had issued in connection with the 1983 public offering was false in that it misrepresented and omitted material facts concerning CDI's lack of product capabilities for software and that it failed to reveal tremendous corporate losses for 1983. In January 1984 Davella filed an Amended Complaint in the class action which contained the same counts as the original Complaint but expanded the factual allegations. On March 13, 1985 Davella filed a Second Amended Complaint in the class action which added a third count against the CDI President and the underwriter for violations of Rule 10b–5. Count three alleged that the defendants schemed and conspired to make false statements and to omit material facts in the preparation of and issuance of the prospectus, and, in reliance on fraudulent representations, buyers were induced to purchase stock at prices higher than the actual value. The amended complaint also expanded the class to include "all persons who purchased common stock of Computer Devices from July 8, 1983 to August 17, 1983" which amounted to more than 2,100,000 shares traded during this period. To date, the district court has not certified the class action.

On March 15, 1984, this Court (Gabriel, J.) entered an Order Fixing Time for Filing Proofs of Claim Other Than for Administrative Expenses. The Order provided that any creditor with a claim that the debtor had listed in the schedules as disputed, or scheduled as undisputed but in a different amount than the creditor asserts, or not listed in the debtor's Schedules, must file a claim before May 4, 1984 "or be forever barred from treatment as a creditor with respect to such claim for the purposes of voting and distribution". Davella's claim was listed as disputed in the debtor's Schedules. The Bar Order was mailed to all listed creditors and was published in the New York Times and Boston Globe on April 11, 12, and 13, 1984.

On May 2, 1984 Davella filed a Proof of Claim for "over $10,000,000" on behalf of himself and all other shareholders similarly situated, based on the allegations of the first Amended Complaint which was attached to the Proof of Claim. On April 4, 1985 Davella filed an Amended Proof of Claim based on his Second Amended Complaint.

The debtor's Motion seeks disallowance of the Amended Proof of Claim dated April 4, 1985 on the grounds that it was filed after the bar date and asserts a new claim, and, in the alternative, that as a "class claim", it is inappropriate in bankruptcy, and that even if allowable on behalf of a class, the claimant has not complied with the procedural requirements for asserting the claim. The debtor further contends

that if the claim is allowed, as it is a claim for damages arising from the purchase of debtor's stock, it nonetheless should be subordinated to the interests of common stockholders under the 1978 version of 11 U.S.C. § 510 (b).

Davella argues that since the allegations of the amended proof of claim arise out of the same transactions and occurences as those forming the basis of the original claim which was filed timely, the amendment relates back to the date of the original proof of claim. Davella contends that his proof of claim was properly filed as a class claim on behalf of the plaintiffs in the pending class action suit. Finally, Davella interprets § 510 (b) to require subordination of stockholder damages claims to unsecured creditors and not subordination to stockholders as well.

This contested matter presents three issues for determination:

(1) Whether an alleged defrauded securities purchaser is entitled to file a class proof of claim in a chapter 11 case as a representative of other stock purchasers on behalf of which he has filed a class action in federal court?

(2) Whether a claimant who filed an original claim for violation of the Securities Act of 1933, Sections 11, 12, and 13, may amend his claim after the bar date to expand the class of claimants and to add a claim for violation of Rule 10 b–5?

(3) Whether a claim for damages for fraud in the purchase of securities of the debtor is subordinate to the claims of all stockholders as well as to the claims of unsecured creditors under the 1978 version of 11 U.S.C. § 510 (b)?

### CLASS PROOF OF CLAIM:

■ There is no provision of the Bankruptcy Code or Bankruptcy Rules that specifically authorizes the filing of a proof of claim on behalf of a class. Decisions under the former Bankruptcy Act of 1898 considered the applicability of class actions in bankruptcy inappropriate because adequate economical and expeditious bankruptcy procedures for resolving claims existed. *See, e.g., SEC v. Aberdeen Securities Co., Inc.,* 480 F.2d 1121, 1128 (3d Cir.1973); *In re Penn Central Transportation Co.,* 328 F.2d 1273, *aff'd,* 455 F.2d 976 (3d Cir.1972).

The only reference to class actions in the Code or current Bankruptcy Rules is found in Bankruptcy Rule 7023, which provides that Rule 23 of the Federal Rules of Civil Procedure governing class actions applies in adversary proceedings. Bankruptcy Rule 7023 (1983). A proof of claim and objection thereto is a "contested matter" not an adversary proceeding, *see* Advisory Committee Notes to Bankruptcy Rule 9014 (1983), unless the objecting party files a counterclaim to the proof of claim. Bankruptcy Rule 3007 (1983). Although the Court may direct that adversary proceeding rules may apply in a contested matter, it is within the discretion of the court to so do. *Matter of GAC Corp.,* 681 F.2d 1295, 1299 (11th Cir.1982). It is this Court's view that class action procedures should not apply to bankruptcy claims litigation.

"... claims against a bankrupt estate may not be treated en masse but instead must be treated on their own merits." *3 Collier on Bankruptcy,* ¶ 57.18[7], at 303 (14th ed. Supp.1984). "... [T]he requirement of individual determination of allowability of claims precludes a class action." *In re Woodmoor Corp.,* 4 B.R. 186, 192 (Bankr.D.Colo.1980). In order to be entitled to a distribution in a chapter 11 bankruptcy case, a creditor must be listed on the Schedules as undisputed, or file a proof of claim. 11 U.S.C. § 1111 (a) (1979); Bankruptcy Rule 3003(c)(2) (1983). To allow a representative of a class to file a claim on behalf of others is inconsistent with the requirement that a claimant file his own claim.

The only case decided under the Bankruptcy Code allowing the class procedure in claims litigation is *In re REA Express, Inc.,* 10 B.R. 812 (Bankr.S.D.N.Y.1981). There, the Court named two claimants as representatives of the debtor's one-thousand non-union employees for the purpose of resolving the trustee's objection to em-

ployees' claims for vacation, holiday, and severance pay. *Id.* at 815. The one thousand employees had filed proofs of claim with the court and the trustee filed a "class" objection. *Id.* at 813. The court found the class action procedure appropriate to resolve the objection because the trustee's general objection to the claims would affect each claim without reference to individual circumstances if sustained and because a unified response was the only practical means by which the employees could participate in the litigation. *Id.* at 814. It is important to note that in *REA* the court was not asked to allow a class claim on behalf of employees. Rather, the court treated the trustee's objection as a class action rather than a "class proof of claim." The court was concerned with the practical control of the trial, an entirely different concern then the need to first file individual claims.

This distinction was emphasized in the recent case *In re Standard Metals Corp.,* 48 B.R. 778 (D.Colo.1985), where the court sustained objections to a bondholder's claim filed on behalf of other bondholders on numerous grounds. First, the court refused to permit the filing of a class proof of claim placing great weight on decisions under the Bankruptcy Act which indicated that class claims were not appropriate and because the claimant had not yet obtained certification of the class action under Rule 23. The Court distinguished the class claim from a proof of claim filed on behalf of a putative class. *Id.* 781.

The court further sustained the objection on the ground that even if class claims were appropriate the claimant had not shown compliance with the various requirements of Rule 23, including obtaining the required class certification, notifying those members of his intended representation, and supplying a written disclosure in accordance with Rule 23. *Id.* at 783. Finally, the court limited the claimant to filing his own proof of claim in light of the strict requirement of Code § 501 and Bankruptcy Rules 3002 and 3003 (c)(2) that a creditor or his authorized agent file a claim. *Id.* at 784.

The similarities between the situation in *Standard Metals* and the Davella claim make the court's reasoning applicable here. As mentioned previously, this Court shares the Colorado Court's doubt that class proofs of claim are ever appropriate in a bankruptcy case. Even assuming the propriety of class claims, however, Davella, like the *Standard Metals* claimant, has not shown that he has complied with the prerequisites for pursuing a class suit under Rule 23 of the F.R.C.P. The class of securities purchasers has not been certified as such by the New York Federal Court and Davella has not filed a request for certification of the class in this Court.

Davella cites the unpublished order of the California Bankruptcy Court in *In re Wickes Securities Litigation,* (Bankr.C.D. Cal. May 18, 1983) in support of his argument in favor of class claims. *Wickes* is distinguishable from the present case, however, because there the claimant had already been certified as the class representative in a separate class action. Moreover, the *Wickes* court refused to permit the class claimant to vote on the plan on behalf of the entire class.

Even considering Davella's class proof of claim as a request for certification under Rule 23, Davella has not yet complied with the prerequisites for certification. There has been no evidence presented from which the Court could find that joinder of all claims is impracticable, that the representatives will fairly protect class interests, and that the representatives claims are typical, all of which are required for application of Rule 23. *See* F.R.C.P. Rule 23(a). There was no evidence that each individual claim was too small to make it economically feasible for filing of individual claims, particularly in bankruptcy where the filing of a claim is both informal and simple and does not require counsel. Proving a claim may be another matter and should not be confused with filing the original claim. Once a group of similar claims is filed, bankruptcy procedures are flexible enough to allow for hearings on liability to be consolidated for

joint trial, to allow for appointment of lead counsel, or the trial of a representative case, or any other procedure that would allow for the expeditious and economical disposition of claims. Davella has not introduced evidence that the class action process would be superior to the normal bankruptcy means of adjudicating claims. Procedurally, Davella has not notified members of the class of his intent to represent them to give them an opportunity to "opt out." *See* F.R.C.P. Rule 23(c)(2); *Phillips Petroleum Co. v. Shutts*, —— U.S. ——, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Finally, Davella has not demonstrated an agency relationship between himself and other purchasers, as required by Bankruptcy Rule 3001 (b). He has not yet been authorized by any court to proceed on behalf of the class. The representations of his counsel are an insufficient basis from which to find compliance with Rule 23. Insofar as Davella's claim purports to assert claims on behalf of other securities purchasers it is disallowed. The merits of Davella's individual claim will be heard at a later date.

Davella argues in favor of a blanket extension of the bar date for securities purchasers in the event the court rules that the class proof of claim was not appropriate because stock purchasers were not served with a copy of the Bar Order setting the deadline for filing claims. The court declines to grant a blanket extension for filing proofs of claim to the alleged defrauded stock purchasers.

■ Creditors have a right to assume that reasonable notice consistent with due process requirements will be given them before their claims are barred. *New York v. N.Y., N.H., & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In chapter 11 cases, creditors whose claims are listed need not file a proof of claim unless they are listed as disputed, contingent or unliquidated. 11 U.S.C. § 1111(a). Bankruptcy Rule 3003(c) provides that a creditor whose claim is not scheduled or is scheduled as disputed, contingent, or unliquidated must file a claim within the time established by

the court. Bankruptcy Rule 3003(c)(2) (1983). One court has declared the Rule unconstitutional to the extent it bars a creditor from filing a claim where he was not notified of the need to file a claim. *In re Middle Plantation of Williamsburg, Inc.*, 36 B.R. 873, 876 (Bankr.E.D.Va.1984). In a chapter 11 case the court may extend the time for filing proofs of claim for cause. Bankruptcy Rule 3003(c)(3) (1983); *In re American Skate Corp.*, 39 B.R. 953 (Bankr.D.N.H.1984). Whether due process requirements have been met in not notifying claimants unknown to the debtor or trustee of the bar date depends on the particular facts of a case. *In re Nevada Emergency Services, Inc.*, 39 B.R. 859 (Bankr.D.Nev.1984). Publication of a bar order in newspapers and business journals has been held to be consistent with due process, where the debtor had no knowledge of the name and address of a claimant. *E.g.*, *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 831 (S.D.N.Y.1985). Where a trustee has knowledge of a creditor's claim, he is required to serve notice on the creditor and not to rely on mere publication. *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 98 (1st Cir.1974).

In the present case, the claimants presented no evidence on the issue of whether the debtor knew the claimants identities so as to require individual notice. In the absence of such evidence, the Court cannot find that notice by publication violated due process. In light of the Court's power to extend the time for filing proofs of claims at any time, the Court will consider any motion by a stock purchaser for extension of time when made on an individual case-by-case basis. To the extent that Davella can identify anyone with whom he had contact and who may therefore have relied on the class action proof of claim Davella will have 30 days to file a list of their names and addresses and those persons will be notified by the clerk that they have 30 days from the mailing of the clerk's notice to file a proper individual claim.

## AMENDMENT OF DAVELLA'S CLAIM

■ The debtor's Motion seeks disallowance of Davella's Amended Claim filed on April 4, 1985 on the ground that it actually asserts a new claim against the debtor after the bar date for filing claims. The standard for determining whether to permit amendment of a timely filed claim after expiration of the bar date is set forth in F.R.C.P. 15 (c), as made applicable to bankruptcy proceedings through Bankruptcy Rule 7015, which provides:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

... "[I]n a bankruptcy case, amendment of a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir. 1985). Still, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of an amendment. *Id.* at 1216; *Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir. 1980); *In re W. T. Grant Co.,* 37 B.R. 593, 594 (Bankr.S.D.N.Y.1984). Amendment of a claim is permitted "only where the original claim provided notice ... of the existence, nature, and amount of the claim and that it was the creditor's intent to hold the estate liable." *In re International Hori-*

*zons, Inc.,* 751 F.2d 1213, 1217 (11th Cir. 1985).

■ Even though an amendment arose out of the same conduct or transaction set forth in the original claim, amendments are not allowed to assert new causes of action when prejudice would result. *E.g., In re W.T. Grant Co.,* 37 B.R. 593, 595 (Bankr.S. D.N.Y.1984) (amendment asserting new claim for rent as administrative expense disallowed where original claim was unsecured claim for rejection of lease); *In re Black & Geddes, Inc.,* 30 B.R. 389, 391 (Bankr.S.D.N.Y.1983) (amendment adding count seeking to impose constructive trust on funds in hands of debtor denied where original unsecured claim was for unpaid freight charges). The prejudice that the courts seek to avoid is the trustee's or debtor's reliance on the bar date in determining the extent of claims. *In re Black & Geddes, Inc., supra,* 30 B.R. at 391. In *Hernandez Jiminez v. Calero Tolado,* 604 F.2d 99 (1st Cir.1979), the First Circuit outlined those conditions for an amendment adding a party to relate back:

(1) the claims against the new party arise out of the same occurrence as the claims in the original pleading, (2) the new party received "notice of the institution of the action" before the limitations period expired, and (3) the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

*Id.* at 102 (citation omitted).

Relation back of an amendment adding a plaintiff is justified only in rare circumstances so as to sanction assertion of wholly new causes of action. *3 J. Moore, Federal Practice,* ¶ 15.15[4.–2] at 1052, and ¶ 15.15[4.–2] at 15–232 (2d ed. Supp.1985).

■ In the present case, Davella's attempt to add new plaintiffs to his amended claim (all persons who purchased debtors stock in July and August 1983) is such an expansion of his claim that it introduces an entirely new cause of action. The amendment enlarges the class from purchasers of

one million shares to purchasers of two million one hundred thousand shares. The amendment adds plaintiffs whose claims arise in different time periods than addressed in the original claim. The increase of the class members from those who bought stock during a public offering to those who bought stock at any time in July and August 1983 adds a new cause of action for fraud upon the entire stock market, as opposed to fraud on purchasers pursuant to a public offering due to a fraudulent prospectus.

Moreover, the addition of the Rule 10b–5 claim, although arising out of some of the same facts inevitably adds new facts in its allegations of conspiracy which are not in the complaint for the original securities violations and asserts a new cause of action that would highly prejudice the debtor. "The potential exposure of a corporation for a fraudulent securities issue is much greater in a 10b–5 action than in an action under the express remedies provisions of the securities act...." *M. Huff, The Defrauded Investor in Chapter X Reorganizations: Absolute Priority v. Rule 10b–5,* 50 Am.Bankr.L.J. 197, 200 (1976). Not until over one year after the bar date did the debtor receive notice of the 10b–5 claim by Davella. Although another individual (Klein) had previously filed a 10b–5 action in New York against the debtor, he had not filed a proof of claim in the chapter 11 case. Therefore, the debtor is prejudiced by the recent assertion of the claim. For these reasons, Davella's amended claim is stricken.

## SUBORDINATION UNDER SECTION 510(b)

Bankruptcy courts have long struggled with the conflict between securities and bankruptcy law in attempting to resolve the priority of claims of defrauded stock purchasers. *See generally M. Huff, The Defrauded Investor in Chapter X Reorganization: Absolute Priority v. Rule 10b–5,* 50 Am.Bankr.L.J. 197 (1976) (hereinafter referred to as *"The Defrauded Investor"*). The ultimate question presented is whether the claim is to be compared to stock or to

damages. Under the former Act there was no express provision for subordination. The SEC maintained that claims of defrauded securities purchasers should be treated as general unsecured claims because they relied on the financial status of the company in the same fashion as trade creditors. Creditors argued against parity treatment because stock purchasers assume equity-type risks. The Defrauded Investor, *supra,* 50 Am.Bankr.L.J. at 201, 205, 210. Although the Supreme Court determined in a nonbankruptcy case that defrauded stock purchasers of an insolvent bank were entitled to rank equally with unsecured creditors, *Oppeheimer v. Harriman Nat'l Bank,* 301 U.S. 206, 57 S.Ct. 719, 81 L.Ed. 1042 (1937), the circuits that considered the status of defrauded stockholders under the former bankruptcy Act agreed that these claims were not entitled to priority over common shareholders. *E.g., In re U.S. Financial, Inc.,* 648 F.2d 515, 521 (9th Cir.1980); *In re THC Financial Corp.,* 679 F.2d 784 (9th Cir.1982); *In re Stirling Homex Corp.,* 579 F.2d 206, 214 (2d Cir.1978).

In recognition of the unsettled status of defrauded shareholders claims in bankruptcy, The Bankruptcy Reform Act of 1978 included a provision for subordination of these claims. The 1978 version of 11 U.S.C. § 510(b) provided:

> (b) Any claim for recission of a purchase or sale of a security of the debtor or of an affiliate or for damages arising from the purchase or sale of such a security shall be subordinated for purposes of distribution to all claims and interests that are senior or equal to the claim or interest represented by such security.

The House and Senate Report explains that the intent of the provision is that claims of defrauded stock purchasers are subordinate to general unsecured creditors and are to share on a parity with common stockholders:

> The subsection also requires the court to subordinate in payment any claim for rescission of a purchase or sale of a security of the debtor or of an affiliate,

or for damages arising from the purchase or sale of such a security, to all claims and interests that are senior to the claim or interest represented by the security. Thus, the later subordination varies with the claim or interest involved. If the security is a debt instrument, the damages or rescission claim will be granted the status of a general unsecured claim. If the security is an equity security, the damages or rescission claim is subordinated to all creditors and treated the same as the equity security itself.

Notes of Committee on the Judiciary, Senate Report No. 95–989, Bankruptcy Code, Rules and Forms, at 118 (West 1983).

The debtor argues that the 1978 statute requires subordination of the claims of defrauded securities purchasers to other holders of the same security. Although the language arguably may be interpreted to reach this result, the provision is ambiguous. If one considers damages claims of defrauded stock purchasers to be the nature of tort damages claims, the language is susceptible to the alternative interpretation that such claims are subordinated to unsecured claims but are still senior to common stockholders' claims. The legislative history to the 1978 version makes clear that Congress did not intend to subordinate these claims to stockholders as well as to unsecured creditors.

That the 1978 version contained a drafting error is evidenced by the legislative history to the 1984 version of § 510(b) which corrects the error. 11 U.S.C. § 510(b) (1984) now provides:

> (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affilite of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented

by such security, except that if such security is common stock, such claim has the same priority as common stock.

The debtor is correct that the new provision does not apply to the present case, which was filed prior to the effective date of the 1984 Amendment. However, the legislative history to the new version of 510 (b) is instructive because it shows that the amendment was offered to clarify the original language and purpose of the statute. "This amendment corrects a typographical error [the misspelling of rescission] and makes a clarifying amendment. It makes clear that the subordination of a rescission claim for stock cannot be below the common stock class." *Senate Judiciary Report* S. Rep. 65, 95th Cong. 1st Sess. 79 (1983). Thus, it is clear that the failure of old 510 (b) to unambiguously provide that claims of defrauded stockholders are to share on a parity with stockholders of the same class was a drafting error.

■■■ A court may correct a mistake in drafting by interpretation if it is in a position to infer the actual intent of Congress. *Heppner v. Alaska Pipeline Service Co.*, 665 F.2d 868, 872 (9th Cir.1982). Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in construing a statute. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1973). In choosing between two plausible readings of a statute, a court will adopt that which more faithfully effectuates the legislative intent. *Jones v. Estelle*, 722 F.2d 159, 166 (5th Cir.1983). Where a statute's language is unclear or has more than one reasonable interpretation it must be construed with reference to its legislative intent. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

■■■ Resort to the legislative history is appropriate in this case because the language of the statute is ambiguous. As noted previously, it does not rule out priority of stock damages claims over common stockholders claims. The debtor's reading of former § 510 (b) is inconsistent with Congress's expressly stated intention of

the 1984 version. Further, as a matter of equity and good conscience the defrauded investor should be in no worse position than the equity interests for whose benefit the subject new equity investments were promoted. For these reasons the debtor's request for a determination that Davella's claim is subordinate to the claims of debtor's common stockholders is denied.

### CONCLUSION

For the reasons set forth above, the claim of Davella as a class action claim is disallowed, however, it will be considered as originally filed as Davella's individual claim. The amendment is untimely and disallowed. No blanket extension of the bar order will be allowed; however to the extent that Davella can identify within 30 days any claimant who relied on the class action claim the clerk will notify these persons of an extension for 30 days from the clerks sending notice for them to file their individual claims. Davella's claim is subordinated to claims of unsecured creditors but not to equity claimants.