In re STANDARD METALS
CORPORATION, Debtor.

No. 84 B 0945 G.

United States District Court,
D. Colorado.

March 21, 1985.

Davis, Graham and Stubbs by Glen E. Keller and Christine Bearman, Denver, Colo., for debtor, Standard Metals.

Isaacson, Rosenbaum & Friedman, P.C. by Michael E. Romero, Denver, Colo., Adelman, Lavine, Krasny, Gold and Levin by Robert H. Levin and Gary Bressler, Philadelphia, Pa., and Greenfield & Chimicles by Nicholas E. Chimicles and R. Bruce McNew, Haverford, Pa., for Dann S. Sheftelman.

Sherman and Howard by Craig A. Christensen, Denver, Colo., for National Bank of Georgia.

### MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the Court on various motions relating to the proof of claim filed by Dann S. Sheftelman ("Sheftelman"). After notice, a hearing was held February 5, 1985. This memorandum opinion represents the Court's findings of fact and conclusions of law pursuant to B.R.P. 9014 and 7054.

### Introduction

The transaction giving rise to Sheftelman's claim involves the debtor, Standard Metals Corporation ("Standard Metals") and two related entities—National Smelting of New Jersey, Inc. ("NSNJ") and National Smelting & Refining, Inc. ("NSR"). NSNJ is a wholly-owned subsidiary of NSR. Standard Metals, in turn, owns 50% of the outstanding stock of NSR.

NSNJ was the owner of a lead smelting and refining facility located in Pedricktown, New Jersey. Captial for operation of the Pedricktown plant was generated by the sale of $6,600,000 of Industrial Devel-

opment Revenue Bonds issued by the New Jersey Economic Development Authority. The bonds were issued on behalf of NSNJ. They were secured by a mortgage on the Pedricktown plant and 100,000 shares of Standard Metals stock.

The bond offering took place in February, 1983. Interest was payable January 1 and July 1 of each year. The interest payments of July 1, 1983 and January 1, 1984 were made as scheduled. However, NSNJ was also required, by virtue of an indenture agreement, to make monthly payments to a sinking fund used for payment of amounts due on the bonds. NSNJ defaulted on this obligation when it failed to make the required monthly payment in November, 1983. The Indenture Trustee under the Indenture Agreement was the National Bank of Georgia ("Bank of Georgia"). The Bank of Georgia first mailed notices to bondholders, advising them of the default, in February, 1984.

The July 1, 1984 interest payment was not made. The July 1, 1984 interest coupons were returned, together with a notice advising the bondholders that there were no funds to pay them.

The bonds had been issued in bearer form. Consequently, the Bank of Georgia did not have the names and addresses of the individual bondholders. There was no central location to where notice of the default could be given to the bondholders. When the original notice of default was given in February of 1984, only those individuals who had elected to convert their bonds into registered form received notice. As additional inquiries were made of the Bank of Georgia, it would add the name of the inquiring party to the mailing list. By January, 1985 the Bank of Georgia's mailing list contained approximately 600 names.

On March 5, 1984, Standard Metals, NSNJ and NSR all filed voluntary petitions under Chapter 11 of Title 11. The NSNJ and NSR proceedings have subsequently been converted to proceedings under Chapter 7. Standard Metals, however, is progressing through the Chapter 11 reorganization process.

From the beginning of the Standard Metals proceeding, it was apparent that the reorganization process would have to be accomplished very rapidly if it were to be successful. On May 4, 1984, Standard Metals moved this Court for an order fixing a bar date for filing proofs of claim pursuant to B.R.P. 3003(c)(3). On May 7, 1984, an order was entered fixing June 10, 1984 as the last date upon which proofs of claim could be filed. The court mailed a copy of the May 7th order to all creditors contained on the court's mailing matrix. Neither Sheftelman nor any other bondholder was on that matrix.

Standard Metals filed a Plan of Reorganization on August 28, 1984. The Plan is to be funded by a loan from Citicorp Industrial Credit. Counsel for Standard Metals stated that in order for the Plan to meet the confirmation standards of 11 U.S.C. § 1129, it is necessary to pay unsecured creditors 100% of their allowed claims. The current loan proposal with the bank contemplates a loan of approximately $12,-000,000.00. This amount is only marginally sufficient to pay the unsecured claims for which proofs have been filed, without consideration for Sheftelman. The bank is unwilling to loan additional funds. Thus, allowance of the Sheftelman claim could jeopardize feasibility of the Plan.

On August 30, 1984, Sheftelman filed his proof of claim. This proof of claim discloses that Sheftelman personally holds six (6) of the bonds having a face amount of $5,000.00 each. However, the proof of claim is purportedly filed on behalf of all persons who purchased or otherwise acquired NSNJ bonds during the period between February 1, 1983 and February 20, 1984.

Attached to the proof of claim is a complaint, dated August 3, 1984, which Sheftelman filed in the United States District Court in and for the District of New Jersey. The complaint alleges violations of the federal securities laws, common law fraud and deceit and common law negligence. Standard Metals, NSNJ and NSR were alleged to have participated in the

wrongful acts, but were not named as defendants, due to the automatic stay. At the time the complaint was drafted, Sheftelman was aware that these three entities had filed for protection under Title 11 and of the concomitant effect of 11 U.S.C. § 362(a).

Sheftelman moved for relief from stay on October 22, 1984, in order to prosecute the New Jersey United States District Court action against Standard Metals and liquidate the claim. Relief from stay was ultimately denied on November 21, 1984. Sheftelman appealed the order denying relief from stay on December 6, 1984.

The debtor filed an objection to Sheftelman's proof of claim on November 26, 1984. The objection rested on three grounds: (1) the claim was not timely filed, (2) the claim improperly purported to represent a class of bondholders, (3) the claim should be estimated under § 502(c). This Court declined to estimate the claim and that matter is not currently before the Court. The remaining portions of the objection were set for hearing February 5, 1985. Notice of the hearing was sent December 27, 1984.

Beginning January 10, 1985, there was a flurry of activity on this matter. On that day Sheftelman filed no less than six motions. The motions of particular importance here are:

(a) motion for continuance of February 5, 1985 hearing;

(b) motion to have B.R.P. 7023 apply to contested matter;

(c) motion for extension of time within which proof of claims may be filed. This was not merely a motion to allow Sheftelman to file his proof of claim out of time.

The motion for continuance was denied January 14, 1985. The motion for extension of time within which any and all proofs of claim may be filed was also denied at that time. However, as clarified by the Order of January 23, the Court reserved the right to further consider the motion at the February 5 hearing. Sheftelman appealed the Order denying the extension of time to file all proofs of claim.

At the request of Sheftelman, the hearing on the objection to claim was bifurcated. Only the procedural objections, including the question of late filing, were heard at the February 5 hearing. The merits of the claim were to be heard at a later date, as necessary.

On January 16, 1985, Sheftelman noticed his own deposition, pursuant to F.R.C.P. 30. The deposition was to be taken by telephone on January 19, 1985. Sheftelman apparently made no attempt to determine if the January 19 deposition was acceptable to counsel for Standard Metals. Counsel for the debtor moved for a protective order prohibiting the deposition. Before the Court could act on the motion for protective order, Sheftelman withdrew the notice of deposition and rescheduled the deposition for January 25, 1985.

This amended notice of deposition was filed January 18, 1985. By an order dated January 22, 1985, the amended notice of Sheftelman's deposition was stricken for failure to comply with Rule 5(a) of the Local Rules of Procedure for the United States Bankruptcy Court for the District of Colorado.[1] However, by the terms of that Order, the Sheftelman deposition could have occurred as scheduled on January 25 if an agreement among the parties could be reached.

On January 23, 1985, before receiving the Order of January 22, 1985, the debtor

---

1. Local Rule 5(a) states:

(a) Unless otherwise ordered by the Court, "reasonable notice" for the taking of depositions under B.R. 7030 (Rule 30(b)(1), F.R. Civ.P.) shall be not less than five days. Rule 6, F.R.Civ.P. governs the computation of time. Pending resolution of any motion under B.R. 7026 or 7030 (Rules 26(c) and 30(d), F.R.

Civ.P.) neither the objecting party, witness, nor any attorney is required to appear at the deposition to which the motion is directed until the motion is ruled upon. The filing of a motion under either of these rules shall stay the discovery at which the motion is directed pending further order of the Court.

filed another motion for protective order. The debtor objected to Sheftelman taking his own deposition in Providence, Rhode Island, the place of Sheftelman's residence. As his testimony would be of prime importance, an order entered directing Sheftelman to appear at the February 5 hearing or appear in Denver, Colorado, at such time, place and date, prior to February 5, as counsel for both parties shall agree, for the taking of his deposition. This Order, dated January 23, 1985, stated that the failure of Sheftelman to comply would result in forfeiture of his claim.

The February 5, 1985 hearing was held as scheduled. Sheftelman did not appear at the hearing. He did not appear for a deposition prior to that time. At the hearing, the Court received the deposition of Alton Ray Crider and a stipulation of facts between Sheftelman and the debtor. Having reviewed the evidence and legal argument presented, I am now in a position to rule on the procedural objections to Sheftelman's claim.

### I. Filing of Proof of Claim on Behalf of a Class of Claimants.

Sheftelman's proof of claim states, *inter alia*, that the claim is filed as a class action pursuant to F.R.C.P. 23(b)(3). It is important to note that the proof of claim was not filed on behalf of a group of persons who have been certified as a putative class under F.R.P.C. 23. Instead, the proof of claim has been filed on behalf of a group for which Scheftelman has sought certification in the related New Jersey U.S. District Court action. As of the date of this hearing, no certification had taken place. The proof of claim is really a class proof of claim, rather than a proof of claim filed on behalf of a putative class.

I find no controlling authority holding whether an individual may file a proof of claim on behalf of an uncertified class of persons under the Bankruptcy Code. The allowability of such a filing appears to be an open question of law, although the few courts who considered this question under the Bankruptcy Act indicated such filings are probably not authorized. *See: Matter*

*of GAC Corp.,* 681 F.2d 1295 (11th Cir. 1982).

The allowability of a class proof of claim under the Bankruptcy Act was discussed in *In re Woodmoor Corp.,* 4 B.R. 186 (Bankr. Colo.1980). There, the bankrupt had been engaged in the development of recreational properties, including some land near Stagecoach, Colorado. Approximately 900 persons who purchased lots at the Stagecoach site filed claims against the estate. Four creditors who had filed proofs of claim sought to proceed as representatives of a class for the purpose of determining the allowability of the claims of Stagecoach lot purchasers.

As to those creditors who had not filed proof of claims, Judge Clark stated:

"In order to be entitled to a *pro rata* distribution in bankruptcy, a claim must be proved and filed as provided for by Rules 301–304. 3 *Collier on Bankruptcy,* 57.14[1]. p. 228. If any Stagecoach landowners failed to properly prove and file his claim as required by the Bankruptcy Act and Rules, he is not entitled to participate in the distribution of the bankrupt's assets. To allow some members of the putative class to file claims on behalf of all members of the class and to allow participation of all as a result thereof would conflict with the statutory scheme of the Bankruptcy Act. Each claimant must prove and file his own claim and a class action cannot be maintained to circumvent that requirement. *In re Society of the Divine Savior,* 15 F.R.Serv.2d 294 (E.D.Wis.,1971)." *In re Woodmoor, supra,* at 192.

Judge Clark went on to recite that "claims against a bankrupt estate may not be treated *en masse* but instead each must be treated on its own merits. 3 *Collier on Bankruptcy,* 14th Ed., 57.18[7], p. 303. Thus, the requirement of individual determinations of the allowability of claims precludes a class action." *In re Woodmoor Corp., supra,* p. 192.

Nonetheless, Judge Clark went on to discuss whether a class may be certified for the purpose of determining a class of

claims, assuming arguendo the propriety of the collective judging of claims. Under the facts of that case, she concluded that proceeding as a class should be denied.

*In re Society of the Divine Savior,* 15 F.R.Serv.2d 284 (Bankr. E.D.Wis.1971), cited in *Woodmoor, supra,* was also decided under the Bankruptcy Act. This involved a situation where a creditor brought suit against the bankrupt for breach of an annuity contract. The creditor sought court approval to maintain the suit as a class action of behalf of similarly-situated creditors (there were 1,100 other annuity-holders). The court denied the motion, concluding that a direct conflict with the Bankruptcy Act would result if the class action were allowed. Specifically, the court held that §§ 57 and 355 of the Bankruptcy Act required each creditor to file a claim in order to participate in any distribution. *Divine Savior, supra,* at 298.

The Court in *GAC Corp.* refused to go so far as to decide the issue of whether a proof of claim was ever allowable under Chapter X of the Bankruptcy Act, but found the claimant failed to follow the procedures required to prosecute a class action, as set forth in F.R.C.P. 23.

In this case, Sheftelman seeks to establish a right to go forward with his class claim by requesting that B.R.P. 7023 be made applicable to the contested matter created by the proof at claim and the objection thereto. B.R.P. 7023 provides that F.R.C.P. 23 applies in adversary proceedings. The filing of a proof of claim is not an "adversary proceeding." As pointed out by *Matter of GAC Corp., supra,* Rule 23 of the Federal Rules of Civil Procedure does not generally apply to a "contested matter" as opposed to "adversary proceedings", but may, upon motion, be directed to apply to contested matters.[2]

A careful reading of the *GAC Corp.* case indicates the Eleventh Circuit Court included the "filing of, or objection to, a proof of claim" as a "contested matter." *Matter of GAC Corp., supra,* at p. 1299. That would seem to indicate the mere filing of a proof of claim creates a "contested matter." Here the motion to have Rule 23 apply was made subsequent to the filing of an objection to the proof of claim. Thus, I need not now decide whether the mere filing of a proof of claim constitutes a "contested matter" so as to entertain the motion to have B.R.P. 7023 apply under Rule 9014 of the Bankruptcy Rules of Procedure. When the motion to have B.R.P. 7023 apply was made, there was clearly in existence a contested matter. Sheftelman apparently feels that if an order enters directing that Rule 7023 applies, his ability to prosecute the "class claim" will follow. I do not agree that such a result necessarily follows.

Before Sheftelman can pursue the class claim, even if F.R.C.P. 23 is held to apply, he must demonstrate compliance with that Rule. This includes obtaining the required class certification, identifying members of the class, notifying those members of his intended representation and supplying a written disclosure in compliance with Rule 2019 of the Rules of Bankruptcy Procedure. *See In re GAC Corp., supra; In re Grocerland Cooperative,* 32 B.R. 427 (Bankr.N.D.Ill.1983). There is no evidence before me of those matters, although it is conceivable Sheftelman understood this issue would be tried at a later date.

At this juncture, it can be said that even if B.R.P. 7023 and F.R.C.P. 23 apply, Sheftelman's authority to proceed with the class claim is not established.

There is an additional reason why Sheftelman cannot proceed on behalf of the other bondholders. There must be compliance with Bankruptcy Rules of Procedure in filing proofs of claim. The form and necessity for filing a proof of claim are not

---

**2.** The applicable bankruptcy rule in *GAC Corp.* was Rule 914, now denominated as B.R.P. 9014. Both Rules apply to "contested matters" and provide: The "court may at any stage in a particular matter direct that one or more of the rules in part VII shall apply,." Part VII includes B.R.P. 7023.

provided for in the Bankruptcy Code, but instead are left to the Bankruptcy Rules of Procedure.[3] 3 *Collier on Bankruptcy,* 501.01, p. 501–5 (15th Ed.Rel. 14 12–84).

In a proceeding under Chapter 11, B.R.P. 3002 and 3003(c)(2) require all unscheduled creditors to file a proof of claim to be treated as creditors for purposes of voting and distribution. The bondholders were unscheduled. They must, therefore, file a proof of claim. The form of the proof of claim is controlled by B.R.P. 3001. Subsection (b) of that Rule requires that a proof of claim be executed by the creditor or the creditor's agent. The provisions of 11 U.S.C. § 501 allow a "creditor or an indenture trustee" to file a proof of claim. Thus, an indenture trustee qualifies as an "agent" capable of filing a proof of claim on behalf of a creditor. *See* B.R.P. 3001(b). Whether the National Bank of Georgia is an Indenture Trustee, as defined in 11 U.S.C. § 101(26), authorized to file a claim on behalf of any of the bondholders herein is not before me. It is clear that Sheftelman is not such a trustee. The requirement that each creditor must file a proof of claim should be strictly enforced. *See, Matter of Shulman Transport Enterprises, Inc.,* 21 B.R. 548 (Bankr.S.D.N.Y.1982). Sheftelman has demonstrated no agency relationship between himself and any other bondholders. Thus, Sheftelman may file his own proof of claim, insofar as he has a claim against this estate, but he may not file a proof of claim on behalf of other bondholders.

To the extent Sheftelman's proof of claim purports to be filed on behalf of the other bondholders, it is deficient under B.R.P. 3001(b). Further, it contravenes the provisions of 11 U.S.C. § 501. Finally, such a filing would be inconsistent with the holdings in *In re Woodmoor Corp., supra; In re Society of the Divine Savior, supra,* and *Matter of GAC Corp., supra.* The objection to claim on that ground must be sustained.

## II. Allowance of Late Filed Claim.

The determination that Sheftelman's proof of claim is not allowable as a class proof of claim does not dispose of all issues presented in the objection to claim. Sheftelman's proof of claim discloses that he is the holder of six of the bonds which give rise to the purported class claim. Standard Metals objects to these six claims on the ground that the proof of claim was not timely filed.

As previously indicated, the bar date was set at June 10, 1984. Sheftelman's proof of claim was filed on August 30, 1984. The motion for an extension of time within which proof of claim may be filed was not presented until January 10, 1985. This motion sought a carte blanche extension of the June 10, 1984 bar date for all bondholders. The motion also requested the Court to require the debtor to provide each of the bondholders notice of the bar date and of each bondholders right to file a claim.

It is evident that Sheftelman became aware of the existing bankruptcy and the necessity to file a proof of claim at least shortly prior to August 3, 1984, if he had no such knowledge prior to expiration of the bar date. August 3, 1984 was the date of the Complaint filed in the United States District Court in New Jersey. Further, after the objection to claim was filed on November 26, 1984, a notice of hearing was sent on December 24, 1984, advising that the debtor's objection to claim of Dann S. Sheftelman would be heard on February 5, 1985. Thus, it was evident from November 26, 1984, that it would be necessary to compile evidence in support of and in proposition to the claim of Sheftelman. It was also evident from and after December 24, 1984, that the hearing on that objection was scheduled for February 5, 1985. Sufficient time remained to accomplish any necessary discovery or preservation of testimony, in compliance with the Rules of Civil Procedure in advance of that time. It is unclear why the urgent discovery process did not take place until approximately two weeks prior to trial.

---

**3.** As Sheftelman was an unscheduled creditor, 11 U.S.C. § 1111(a) is not applicable.

In my view, a creditor must accept some responsibility for examining an existing bankruptcy file, making necessary inquiries as a result of that examination and taking whatever action is appropriate to protect that creditor's interest within a reasonable time upon learning of a bankruptcy. Here I must note that at least a period of approximately five months elapsed before Sheftelman ever filed a motion to extend the time for filing proofs of claim. Further, it was my feeling that such a carte blanche extension of time for all bondholders and the requirement that the debtor provide each bondholder with notice of the bankruptcy and notice of the right to file a claim where the debtor had no reason to believe a claim existed was unwarranted. Thus, the motion for an extension of time was denied on January 14, 1985. As clarified by the Order of January 23, 1985, the matter of an extension of time to file the Sheftelman claim was reserved for further consideration at the hearing on February 5, 1985. Sheftelman then appealed the January 14, 1985 Order. I do not construe the appeal to have the effect of divesting this Court of jurisdiction to determine the matters referred to herein. No final order had entered as of February 5, 1985, with respect to the Sheftelman claim, and no such order has entered to this date. Having reviewed the evidence and the applicable law, I now conclude that Sheftelman's motion for an extension of time within which to file his proof of claim must be denied on two independent grounds. They are as follows:

A. *Failure to comply with Orders of the Court.*

■ Beginning on January 16, 1984, Sheftelman noticed his own deposition and the depositions of various other parties in connection with the hearing to be held on February 5, 1985. These discovery requests were defective under the Rules of Procedure and prompted various motions for protective orders from the debtor. It is apparent from the nature of the discovery disputes that Sheftelman sought to preserve his own testimony for introduction at the February 5, 1985 hearing. The apparent need for this hastened deposition process was that Sheftelman had plans to go to Portugal on business and did not desire to be at the hearing. However, Sheftelman did not display any willingness to schedule his deposition at a time and location acceptable to other parties. In fact, the record indicates a total lack of effort on Sheftelman's part to initiate any cooperation in this discovery process.

On January 23, 1985, counsel for Standard Metals moved for a protective order requiring Sheftelman to appear in Colorado for a deposition or, alternatively, to appear for cross-examination at the hearing on February 5, 1985. That motion was granted. By an Order entered on January 23, 1985, it was indicated that the failure of Sheftelman to attend such a mutually-scheduled deposition or to appear at the hearing would result in forfeiture of his claim.

Sheftelman then moved to reconsider the Order, and this motion to reconsider was denied. Sheftelman also filed a notice of appeal and a motion for leave to appeal the January 23, 1985 Order. In connection with this appeal, Sheftelman sought a stay pending appeal. The motion for stay pending appeal was denied.

The hearing of February 5, 1985 was held as scheduled. Sheftelman did not appear. Further, no appearance was made in Colorado for the purpose of taking Sheftelman's deposition.

It is recognized that Mr. Sheftelman is not a resident of the District of Colorado. It is also provided in F.R.C.P. 45(d) that a non-resident of the district may ordinarily only be required to attend a deposition in the county where he is served. However, that Rule also provides that the court may determine such other convenient place for such a deposition. Here, it was Sheftelman who desired to preserve his own testimony and it was inappropriate to compel the debtor to incur the expense necessary to accommodate Mr. Sheftelman with his own deposition in Rhode Island. Thus, it was my determination that under all of the cir-

cumstances if Sheftelman wished to preserve his testimony it would be done in Colorado and at the mutual convenience of both parties. Alternatively, Sheftelman could attend the hearing.

It is also noted that there were alternative methods for preserving or presenting evidence through alternative discovery procedures. None of these were suggested or attempted throughout the proceeding. Under F.R.C.P. 37(b)(2)(C), made applicable by B.R.P. 9014 and 7037, this Court has the authority to, among other things, strike the pleadings or enter a default against a party who fails to obey an order to provide or permit discovery. Sheftelman has already been advised this would be the result. Accordingly, the proof of claim filed by Sheftelman on August 30, 1985 is stricken on this ground.

B. *Failure to Show "Cause".*

The evidence before me on the issue of whether cause has been demonstrated to allow Sheftelman's claim to be late filed is scant. At the hearing held on February 5, 1985, I took judicial notice of the files in this case. The only other evidence present was the deposition of one Alton Ray Crider and a stipulation of facts entered into between Sheftelman and the debtor. An offer of proof was made by counsel for Sheftelman, indicating that if Mr. Sheftelman had appeared, his testimony would be that he had no knowledge of his potential claim against Standard Metals or of the Standard Metals bankruptcy prior to the bar date of June 10, 1984.

Mr. Crider is an agent of the National Bank of Georgia, the indenture trustee of the NSNJ bonds. Briefly, Mr. Crider's deposition discloses that the National Bank of Georgia has made no investigation into possible securities violations in connection with the NSNJ bond offering. The first date any bondholders received notice of a default on the indenture agreement from the Bank was in February, 1985. The July, 1984 interest payment on the bonds was not made and the interest coupons were returned. Since February, 1984, the Bank has sent approximately 12 notices to the bondholders, informing them of the status of the bonds. I have incorporated these findings into the findings of fact entered herein.

The stipulation between Sheftelman and the debtor simply states that the bondholders were not listed as creditors in the Standard Metals Schedules and Statement of Financial Affairs, and that the bondholders did not receive "legal" notice of the petition and bar date. The stipulation further indicates that the bondholders were not listed as creditors on the debtor's books and records, and the debtor has no information regarding when Sheftelman received actual notice of these bankruptcy proceedings.

The stipulation is not remarkable, in that the inclusion of bondholders as creditors in the Standard Metals Statements, Schedules and books and records would not be expected to occur unless Standard Metals had some reason and notice to indicate these bondholders were, indeed, creditors. There is no evidence to indicate that Standard Metals ever intentionally omitted these persons or entities from its records.

The setting and extension of a bar date for filing proofs of claim in a Chapter 11 proceeding is controlled by B.R.P. 3003(c)(3), which states:

"(3) *Time for Filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."

The term, "for cause shown", is the exclusive standard under which an extension may be granted under B.R.P. 9006(b)(3).

■ I have been unable to locate any authoritative opinions discussing the "cause" standard of B.R.P. 3003(c)(3). However, it is apparent in light of other Rules of Procedure and the Code that the burden of showing the existence of "cause" should rest on the party seeking the extension of time.

■ In determining whether the "cause" standard has been met, it is necessary to remain cognizant of the creditors' due process rights. A violation of a creditor's

constitutional rights would most certainly be cause for extension of the bar date. *See, Reliable Electric Co., Inc. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir. 1984).

The Supreme Court has repeatedly held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The requirements of due process apply to bankruptcy reorganization proceedings. *New York v. New York, New Haven and Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

The amount of notice which is required is not the subject of a formula which has been expressed by the Supreme Court. As stated in *Mullane, supra,* the amount of notice which is necessary is dependent upon the facts and circumstances of each particular case.

In the context of bankruptcy reorganizations, a distinction should be drawn between creditors who are known to the debtor as opposed to unknown possible claimants. Known or identifiable creditors and claimants have a right to assume that they will receive all of the notices required by statute before their claims are forever barred. Such persons, even after receiving actual notice of the bankruptcy, have no duty to inquire about further court action. *Reliable Electric Co. Inc. v. Olson Construction Co., supra; See also, New York v. New York, New Haven and Hartford, supra.*

There is a lack of authority as to the amount and type of notice which must be given to unknown claimants. Based on principles announced in *Mullane, supra,* and *Reliable Electric, supra,* one court has determined there is an arguable requirement that at least minimal notice to unknown claimants must be given to afford them an opportunity to be heard in the reorganization case before their claim may be discharged. *In re Nevada Emergency Services, Inc.,* 39 B.R. 859 (Bankr.Nev. 1984); *see also,* 5 *Collier on Bankruptcy,* 1141.01 [4][b], p. 1141–12 (15th Ed.Rel. 3 6–83). In *Nevada Emergency Services,* it was pointed out that notice by publication "is a poor and sometimes hopeless substitute for actual service of notice . . .", but is sometimes necessary where it is not reasonably possible or practicable to give a more adequate advisement, relying upon *Mullane v. Central Hanover Bank & Trust Co., supra. In re Nevada Emergency Services, Inc., supra,* at page 863.

The requirement for such publication would seem to be more appropriate where there is some evidence of the existence of a claim or claims, with the identify of the claimants yet to be determined. That does not appear to be the situation here.

Here, I cannot escape the conclusion that Sheftelman was unknown as a potential claimant to this debtor until at least following the complaint which was filed on August 3, 1984. It must also be observed that Sheftelman knew prior to that time of the bankruptcy and of the existence of his claim. The record fails to disclose any action of the debtor to secrete information from Sheftelman or to avoid providing Sheftelman with required notices of proceedings. Sheftelman had the opportunity to examine the court files and to submit in a timely manner a motion to the Court to allow late filing of a proof of claim. Over five months elapsed between the time Sheftelman knew of his potential claim and his motion to allow the late filing of that claim. The debtor had a right to rely upon proofs of claim filed in attempting to obtain the necessary loan to fund its plan and pay off those creditors who had been diligent in pursuing their rights. That loan has been obtained here. Other creditors will be adversely affected if Sheftelman's lack of diligence is now excused and he is allowed to come forth with his late-filed proof of claim. Under all of the

circumstances presented herein, I cannot conclude that Sheftelman's due process rights have been violated so as to warrant an extension of the bar date. I must conclude that it would be unfair to allow Sheftelman to file his claim late:

It should be noted that the circumstances of a case do not have to result in a deprivation of due process to establish "cause" for an extension of the bar date under B.R.P. 3003(c)(3). The Ninth Circuit Court of Appeals recently discussed the factors which are relevant to a determination of an analgous situation where a creditor sought to late file a complaint to determine dischargeability of a debt. *In re Magouirk*, 693 F.2d 948 (9th Cir.1982). Although *Magouirk* was decided under the "excusable neglect" standard of former Bankruptcy Rule 906, the factors discussed in that case appear to be illustrative of the question presented here. The factors enumerated by the Ninth Circuit were:

"(1) whether granting the delay will prejudice the debtor, (2) the length of the delay and its impact on efficient court administration, (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform, (4) whether the creditor acted in good faith, and (5) whether clients should be penalized for their counsel's mistake or neglect." *In re Magouirk, supra*, at page 951.

Here, I have found that the delay in filing this proof of claim and the motion to allow late filing has prejudiced the debtor. The purpose of the bar date was to set a date after which the debtor could finally fix its outstanding obligations. *In re Tobilar*, 29 B.R. 672 (Bankr.W.D.La.1983). Based on the proofs of claim which were filed, the debtor negotiated a loan which forms the basis of its plan of reorganization. Allowance of Sheftelman's proof of claim will likely jeopardize the feasibility of that plan. The extent of prejudice to the debtor figures largely in the Court's decision of whether to allow a late-filed claim. *In re Hardy*, 33 B.R. 77 (Bankr.Nev.1983); *In re C.S.T. Construction Co.*, 21 B.R. 840 (Bankr.N.D.Ill.1982).

Secondly, allowance of Sheftelman's claim would have a disruptive impact on the administration of this case. In light of my determination with respect to "class proofs of claim" it is apparent that if bondholders' claims are to be dealt with through the plan, each bondholder would have to file a proof of claim and seek leave to late file that proof of claim. This would necessitate notice to all bondholders advising them of their potential claims. Such a procedure would further delay reorganization and promote further litigation. If a debtor fails to give adequate notice to a claimant, that claim will survive bankruptcy. Thus, in this instance, if Sheftelman is able to establish by competent evidence that his due process rights have been violated with respect to his putative claim, the issue of whether that claim survives this bankruptcy will have to be addressed. *See New York v. New York, New Haven & Hartford R.R. Co., supra.* On the other hand, if notice was adequate, I see no reason to subject the debtor to a continual stream of late-filed proofs of claim.

While certain factual situations may present "cause" under B.R.P. 3003(c)(3), this standard should not be lightly regarded. To do so would put bankruptcy courts and debtors in the position of indefinitely having to consider claims whenever some sort of excuse is asserted. Such a procedure destroys the objective of finality which the fixing of a bar date seeks to establish. *Matter of Evanston Motor Co., Inc.*, 26 B.R. 998 (D.C.N.D.Ill.1983); *see also, Hoos and Co. v. Dynamics Corporation of America*, 570 F.2d 433 (2d Cir. 1978).

The third factor relevant to this case is whether the delay was beyond the reasonable control of the person whose duty it was to perform. It has been suggested that Standard Metals had a duty to publish notice of the bar date to inform creditors and equity security holders of the bar date. As can be gleaned from previous discussion, I do not believe such a requirement is

appropriate. The imposition of such a requirement would open the door to requiring publication in the case of all publicly held companies. Difficulties attendant to determining when such publication should be required and the adequacy of the content of the notice would likely create untold problems. I do not feel notice requirements beyond those contained in B.R.P. 2002 are required.

Additionally, it must be noted that some of the delay in this instance was within the control of Sheftelman. The complaint of August 3, 1984, in the United States District Court for the District of New Jersey demonstrates that Sheftelman had actual knowledge of Standard Metals bankruptcy sometime prior to that time. The proof of claim was not filed until August 30, 1984. The motion to file that proof of claim out of time was not filed until January 10, 1985. Some burden must be placed on an unknown claimant to act promptly when he receives actual notice of the bankruptcy.

Based on the foregoing, it is my determination that Sheftelman has not shown cause for extension of the bar date.

IT IS THEREFORE ORDERED:

1. That Sheftelman's motion for order directing that B.R.P. 7023 shall apply to the filing of a proof of claim is denied at this time;

2. The proof of claim filed by Sheftelman on August 30, 1984, is stricken for failure to comply with Orders of this Court;

3. That Sheftelman's motion for extension of time within which to file proofs of claim is denied.

FURTHER ORDERED that within ten (10) days of the date of this order, any party may file a written request for the withdrawal of his exhibits received in evidence or in the possession of the Court. Upon conclusion of all appellate review pertinent hereto, or upon expiration of time to initiate such review, as the case may be, exhibits so requested shall be returned.

Thereafter, the Clerk may destroy or otherwise dispose of any exhibits not request-

ed and returned in accordance with this order.