**In re Clinton W. MURCHISON, Jr., Debtor.**

Bankruptcy No. 385–30266–HCA–11.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Dec. 8, 1987.

Camille McLeod, Johnson & Swanson, Dallas, Tex., for debtor.

Frances Valdez–Valdez, Baker, Mills & Glast, Dallas, Tex., for movant, California First Bank.

### MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

HAROLD C. ABRAMSON, Bankruptcy Judge.

Before this Court is the Motion of California First Bank ("CalFirst") for Reconsideration of Order Disallowing Claim, Alternative Motion for Extension of Time to File Claim, Alternative Motion to Permit Late Filing of Claim, Alternative Motion to Deem Proofs of Claim Filed Informally and to Permit Amendment Thereof, and Alternative Motion Pursuant to Rule 5005(b) to Deem Materials and Pleadings Filed When Received and Answer and Response in Opposition to Plan Trustee's Objections to CalFirst's Claim No. 33. The Plan Trustee under the confirmed plan of reorganization in the above-styled and numbered bank-

ruptcy case has actively opposed CalFirst's motions. Both parties have moved this Court for summary judgment based upon the pleadings and the facts in the record. This Court finds that there is no material dispute as to factual matters and that the case is ripe for determination on the legal issues. This is a core proceeding under 28 U.S.C. § 157(a) and (o).

## I. BACKGROUND OF THE CASE

Clinton W. Murchison, Jr. directly and indirectly engaged in a variety of business activities. The general areas included real estate development, banking, recreation, oil and gas, and high technology. In earlier years, these activities were conducted almost exclusively through a partnership, Murchison Brothers. However, in later years the partnership engaged in no new ventures but commenced liquidation. Stock of Corland Corporation[1] was distributed to Debtor Murchison. It served as the principal corporate holding company.

An involuntary petition in bankruptcy under 11 U.S.C. § 303 was filed against Mr. Murchison on February 7, 1985. On February 21, 1985, Mr. Murchison converted the proceeding to one under Chapter 11 of Title 11, and relief was ordered. On July 8, 1986, an order confirming a plan of reorganization was entered. The plan was essentially a liquidating plan. Administration of the plan continues today and it is in that regard that the present controversy arises.

## II. BACKGROUND OF THE PROCEEDING

The roots of this conflict may be traced to 1982 when CalFirst began making loans to several entities affiliated with the Debtor. These transactions included loans to Marina Bay and to Holua Associates, a joint venture in which Tecon–Kona Corporation and Kona Post Corporation were partners. These loans were unconditionally and absolutely guaranteed by the Debtor. Eventually, these loans went into default and the Debtor was called upon to make good his guarantees. Unfortunately, at the time of default, the Debtor's finances were already strained, and the bankruptcy soon followed.

On the schedules filed by the Debtor in the bankruptcy case, the claim of CalFirst was listed as "disputed." Since CalFirst's claim was shown as disputed, Bankruptcy Rule 3003(c)(2) required CalFirst to file a proof of claim in order to adequately protect its interest. It should be noted that Debtor's schedules were at all times available for inspection in the Clerk's Office of the United States Bankruptcy Court for the Northern District of Texas. Further, it appears that copies of the Debtor's schedules were made available at creditor committee meetings which CalFirst attended. CalFirst claims that it never saw these schedules, and therefore was never aware that its claim was listed as disputed.

By Order of this Court dated December 19, 1985, a bar date of January 19, 1986 was set for all claims listed on the Debtor's schedules as disputed, contingent, or unliquidated. This bar date clearly applied to CalFirst. A certificate of mailing together with affidavits of the Debtor's attorneys indicate that notice was mailed both to CalFirst and to its attorney of record, Mr. Barry Freeman.

While the bar date was set for January 19, 1986, the Plan Trustee has, for various reasons, decided not to object on grounds of untimeliness to claims filed before April 1, 1986. Effectively, the creditors of the estate had a year and two months to file proofs of claim.

It is readily apparent, and largely admitted by CalFirst, that in all this time CalFirst ignored notices of the bar dates, failed to monitor progression of the case, and failed to undertake even the most basic of actions to assert its claim on its Marina Bay debt. CalFirst filed a proof of claim for the Holua debt well within the time for filing. However, CalFirst did not get around to filing a proof of claim for the Marina Bay debt until June 30, 1986, about six months after the original bar date and

---

1. Another debtor entity herein.

almost seventeen months after the filing of the involuntary petition.

CalFirst demonstrated remarkable dilatory conduct throughout the entire progression of this case. In September 1986, the Plan Trustee filed an objection to CalFirst's Claim No. 168, the late filed Marina Bay Claim, based on untimely filing. Filed green cards show that this objection was served on CalFirst. Counsel for CalFirst did not bother to attend the hearing on the objection, and, on proof of service, the objection was allowed.

CalFirst did not even act promptly to seek rehearing on the allowed objection to its claim. The Motion to Reconsider was not filed until May 15, 1987, more than seven months after the Plan Trustee objected to the claim.

### III. THE CLAIMS OF CALFIRST

Well after its claim has been disallowed, the beast has awakened. Counsel for CalFirst has sought to bury this Court in paper. CalFirst's pleading seeks reconsideration of order disallowing claim, alternatively, a motion for extension of time to file claim, alternatively, a motion to permit late filing of claim, alternatively, motion to deem proofs of claims filed informally and to permit amendment thereof, alternatively, motion pursuant to Rule 5005(b) to deem materials and pleadings filed when received.

### A. Motion to "Deem" Materials Filed

■ CalFirst urges this Court to "deem" its claim filed within the bar date pursuant to Bankruptcy Rule 5005(b). In support of the deemed filing, CalFirst cites various communications between CalFirst and various parties to the case, including the Debtor's attorney. It appears that all of these correspondence were exchanged before the filing of the bankruptcy petition. To allow these types of communications to satisfy the requirements of Rule 5005(b) would vitiate the intent of the proof of claim requirements. Rule 5005(b) reads as follows:

(b) Error in Filing. A paper intended to be filed but erroneously delivered to the trustee, the attorney for the trustee, a bankruptcy judge, a district judge, or the clerk of the district court shall, after the date of its receipt has been noted thereon, be transmitted forthwith to the clerk of the bankrutcy court. In the interest of justice, the court may order that the paper shall be deemed as of the date of its original delivery.

Initially, this Court would note that there is no authority within its knowledge which allows a deemed filing for prepetition communications. However, a simple reading of 5005(b) demonstrates a more fundamental problem—there is nothing to indicate that these correspondence were "intended to be filed" with this Court. The communications produced by CalFirst are ordinary correspondence between various parties to the case. Virtually every creditor can easily produce this type of letter from its files. If ordinary correspondence were held to be sufficient to satisfy the requirements of 5005(b), there would never be a need for a creditor to file a proof of claim. Further, this Court believes that reliance on the Debtor's attorney to file a proof of claim for a creditor is unwarranted where it is not in the Debtor's best interest. A creditor should assume that if it does not file a proof of claim, then no one will.

### B. Motion for Enlargement of Time to File Proof of Claim

■ Under Bankruptcy Rule 9006(b)(1), this Court may enlarge the time to file a proof of claim if the failure to act was the result of excusable neglect. Excusable neglect is usually defined as "the failure to timely perform a duty ... due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp., (In re South Atlantic Financial Corp.),* 767 F.2d 814, 817 (11th Cir. 1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

The facts of this case do not demonstrate excusable neglect. CalFirst was clearly aware of the bankruptcy filing, having participated in several early creditors' meet-

ings. CalFirst was also aware that it had a claim against the Debtor for the Marina Bay debt. Further, as CalFirst's conduct in filing a claim for the Holua debt shows, CalFirst was aware that prompt filing of proofs of claim is required in a bankruptcy case. The facts clearly show that CalFirst failed to take even the most elemental of actions to protect their claim, such as checking Debtor's schedules, reading notices from the Bankruptcy Court, or filing a claim. This failure to take basic precautions precludes any finding of excusable neglect.

### C. Motion to Extend Time to File Proofs of Claim

██ CalFirst urges this Court to extend the time for it to file a claim under Bankruptcy Rule 3003(c)(3). That rule reads as follows:

> (3) Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

There is some dispute as to the meaning of "cause" in the 3003(c) context. Some courts appear to suggest that "cause" means excusable neglect. *See, In re Arrow Air, Inc.,* 75 B.R. 375 (Bankr.S.D.Fla. 1987). This Court has already noted the lack of excusable neglect. Other courts suggest the "cause" is broader than simply excusable neglect. *See, In re Terex Corporation,* 45 B.R. 290 (Bankr.N.D.Ohio 1985). Some factors considered in determination of cause under this standard include: (i) prejudice to the Debtor, (ii) reason for delay, (iii) length of the delay, and (iv) the good faith of the creditor. *In re Jartran, Inc.,* 76 B.R. 123, 126 (Bankr.N.D.Ill.1987).

██ The asserted "cause" in this case for extension of the bar date is failure to receive notice of the bar date. The party seeking the extension has the burden of proof. *In re Standard Metals Corporation,* 48 B.R. 778, 786 (Bankr.D.Colo.1985). The standard is not a light one, or the Court would be considering claims indefinitely. *Id.* at 788. The Court concludes that CalFirst has failed in its burden.

CalFirst has pled ignorance of the events of the case. It claims that it never knew its claim was disputed, yet the Debtor's schedules were conveniently available. "[A] creditor must accept some responsibility for examining an existing bankruptcy file, making necessary inquiries as a result of that examination and taking whatever action is appropriate to protect that creditor's interest within a reasonable time of learning of a bankruptcy." *Id.* at 785; *See also, In re Burke,* 76 B.R. 62 (Bankr.D.Vt. 1987).

CalFirst claims that it received no notice of the bar date for claims. Yet a certificate of service and affidavits of counsel for the Debtor indicate that the order was sent to both CalFirst and to its counsel of record. However, even if they did not receive the actual order, the bar date appeared of record. Since the trustee has not objected to claims filed before the final hearing on the disclosure statement (which was accompanied by a copy of the plan), CalFirst should have been on notice from that source also.

CalFirst cannot be heard now to claim lack of due process because of failure to receive notice. "The fundamental requirement of due process is the opportunity to be heard at 'a meaningful time and a meaningful manner.'" *Brock, Secretary of Labor v. Roadway Express, Inc.,* — U.S. —, —, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987). CalFirst was provided with and received notices of the bankruptcy, the bar date, and the objection to the claim; its due process rights have been met. *Burke,* 76 B.R. at 64. CalFirst has not suffered a failure of notice, rather they have suffered a failure to act diligently.

### D. Informal Proof of Claim

██ In the alternative, Calfirst urges the Court to allow it to file an amended proof of claim. It is obvious that before an amendment may be allowed, there must first be some filed claim. *In re Sems Music Co.,* 24 B.R. 376, 380 (Bankr.M.D. Tenn.1982). Since CalFirst has filed no formal proof of claim, they are left to establish an informal proof of claim. In or-

der to establish an amendable informal proof of claim, the movants must show:

1) The proof of claim must be in writing;
2) The writing must contain a demand by the creditor on the debtor's estate;
3) The writing must express an intent to hold the debtor liable for the debt;
4) The proof of claim must be filed with the Bankruptcy Court; and
5) Based on the facts in the case, it would be equitable to allow the amendment.

*In re McCoy Management Services, Inc.,* 44 B.R. 215, 217 (Bankr.W.D.Ky.1984).

■ Using this list, several of CalFirst's claims may be dealt with summarily. First, CalFirst points to the Debtor's knowledge of the debt as proof of the informal claim. Debtor's knowledge of the claim has never been held sufficient to constitute an informal proof of claim. *See, e.g., In re Stern,* 70 B.R. 472, 476 (Bankr E.D.Penn.1987).

Movant also directs the Court to various correspondence and communications between CalFirst and the Debtor, Debtor's attorney, and the Plan Trustee. These communications cannot constitute a proof of claim because they were not filed with the Court. *Id.* Further, mere knowledge on the part of the trustee is not sufficient to permit an amended proof of claim.[2] *Dabney v. Addison,* 65 B.R. 348, 351 (E.D. Va.1985).

It is therefore shown that there is nothing on the record to support CalFirst's assertion of an informal proof of claim. However, even if there were more evidence, this Court would still be reluctant to grant an amendable, informal proof of claim in this case. Proofs of claim occupy an important role in the bankruptcy process and ignoring the filing requirements on equitable grounds should be done only in limited instances. The equities do not favor the overriding of statutory requirements in this case.

The purpose of establishing a bar date for claims is to encourage the prompt administration of the estate. *See e.g., In re Ungar,* 70 B.R. 519, 521 (Bankr.E.D.Penn. 1987). This prompt administration accrues to the benefit of the creditors, the debtor, and the court. *Id.* For these reasons, the courts have been reluctant to find exceptions to the requirements.

However, the bankruptcy courts are courts of equity and are bound to examine every claim to ensure that injustice is not done. *Leach v. Small Business Administration, (In re Crown Cabinets, Inc.),* 488 F.2d 91, 92 (5th Cir.1973). For that reason, many courts have been willing to ignore the formal requirements of a claim. Therefore, in the interests of equity, amendment of an informal proof of claim is frequently allowed. *See, Anderson–Walker Industries, Inc. v. LaFayette Metals, Inc., (In re Anderson–Walkers Industries, Inc.),* 798 F.2d 1285, 1297 (9th Cir.1986).

However, the equities do not weigh in favor of the movant in this instance. This is not an unsophisticated creditor with no knowledge of the bankruptcy proceeding. Instead we have a major lending institution, represented by competent counsel, on their substantial unsecured claim. Yet, CalFirst failed to take the most basic efforts to protect its claim. There is adequate evidence to support the contention that CalFirst simply ignored notices from the Court concerning the bar date. Yet even if these notices were not received, it is difficult to comprehend that counsel for a sophisticated creditor with a claim that size of CalFirst's should need to be reminded to promptly file a proof of claim.

**2.** CalFirst cites the case of *Walsh v. Lockhart Associates,* 339 F.2d 417 (5th Cir.1964), to support the contention that the knowledge of the creditor's claim on the part of the debtor or the trustee is sufficient to constitute an informal claim. That case is plainly distinguishable on many grounds. First, the creditor in that case was not scheduled. Second, the creditor in that case had no knowledge of the filing of the bankruptcy petition. Finally, the Court found that the failure to allow the informal claim would constitute "rank fraud." None of these facts is present in this case. Instead, the Court would cite another Fifth Circuit case which held that an amendable proof of claim existed "if the Court be informed by its own files of the existence, nature and amount of the claim ..." *Fausett v. Murner,* 402 F.2d 961, 963 (5th Cir.1968), *quoting, In re Brill,* 52 F.2d 636, 638 (S.D.N.Y. 1931). In this case, the Court has already noted the lack of filed information regarding CalFirst's claim.

**42**

In conclusion, this Court would incorporate the words and reasoning of the Second Circuit:

> This clear Congressional intent to require filing of valid proofs of claim within the time limits that it has set is sufficient to preclude us from finding exceptions to these rules in the supposed interest of equity. Beyond this, it cannot be said that when a claim has been scheduled by a debtor, the filing requirement imposing time limitations is a purposeless formality. For one thing, it insures that creditors know what they will receive under a plan within a reasonable time after they vote to confirm it. It also helps to avoid fraudulent inflation of amounts due creditors, by a debtor, for his benefit. In the instant case the amount owed to Hoos is beyond dispute. But there must come a time when an arrangement becomes final, so to speak. Not only are the creditors who vote for the plan entitled to this. The debtor itself must be able to function, and new creditors might not extend credit, absent such finality. It would be inequitable as to all three—old creditors, debtor, and new creditors—not to have a cut-off date beyond which even claims on a scheduled indebtedness may not be filed. Thus, however much we would like to permit the bankruptcy court to consider in a particular case, including this one, whether it would be "equitable" to permit late filing of a scheduled claim, to do so would put the bankruptcy court in the unenviable position of indefinitely having to consider claims whenever some sort of excuse is asserted. Such a procedure would destroy the objective of finality which Congress obviously intended to promote.

*Hoos & Co. v. Dynamics Corporation of America,* 570 F.2d 433, 439 (2d Cir.1978).

For the foregoing reasons, the Motion of California First Bank for Summary Judgement is DENIED. The Plan Trustee's Motion for Summary Judgement is hereby GRANTED.

ORDERED ACCORDINGLY.